Docket No. 16-16665

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

VICTOR P. GIOTTA and LORALEE GIOTTA, on behalf of themselves and all others similarly situated,
Plaintiff-Appellants,

v.

OCWEN FINANCIAL CORPORATION; et al.,
Defendant-Appellees.

Appeal from the United States District Court for the
Northern District of California, San Jose
Honorable Beth Labson Freeman, United States District Judge
Case No. 5:15-cv-00620-BLF

## BRIEF OF PLAINTIFF-APPELLANTS

Joseph N. Kravec, Jr.
James M. Pietz
Wyatt A. Lison
McKean J. Evans
FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Email: jkravec@fdpklaw.com;
jpietz@fdpklaw.com;
wlison@fdpklaw.com;
mevans@fdpklaw.com

Stephen F. Yunker
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 233-5500
Email: sfy@yslaw.com

Rosemary M. Rivas
LEVI & KORSINSKY LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Email: rrivas@zlk.com

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF THE ISSUES ...........................................................................3

STATEMENT OF THE CASE................................................................................5

    I.  Ocwen Begins Servicing The Giottas' Mortgage And Charges The Giottas For BPOs and Property Inspections.....................................................5

    II. Unbeknownst To The Giottas, Ocwen's Charges Included Substantial Hidden Add-On Fees .......................................................................................7

    III.Ocwen Charged The Giottas Hidden Add-On Fees As Part Of Its Well-Documented Scheme To Overcharge Borrowers For Mortgage Servicing Fees...............................................................................................11

    IV.   The Giottas Commence This Action Against Ocwen................................14

STATEMENT OF FACTS .....................................................................................16

STANDARD OF REVIEW ....................................................................................16

SUMMARY OF ARGUMENT..............................................................................17

ARGUMENT .........................................................................................................20

    I.  THE DISTRICT COURT MISCONSTRUED FDCPA § 1692e TO MEAN THAT DEBT COLLECTORS MAY BILL CONSUMERS FOR BPOs AND PROPERTY INSPECTION FEES THAT INCLUDE HIDDEN ADD-ON CHARGES......................................................................................................20

        A. The Giottas Plausibly Allege Ocwen Violated FDCPA § 1692e(2) .........23

           1. The FDCPA's Plain Language Provides Authority For Plaintiffs' Claims..............................................................................................23

           2. This Court's Case Law Construing § 1692e(2) Provides Authority For Plaintiffs' Claims ..................................................................25

i

3.  Other Courts' Decisions Construing § 1692e(2) Also Provide Authority For Plaintiffs Claims ..........................................................29

4.  The FDCPA's Purpose Provides Authority For The Giottas' Claims .32

B.  The District Court Erred In Construing FDCPA § 1692e(2) To Require Allegations That The Fees Were Not Legally Authorized ......................33

C.  The Giottas' Rosenthal Act And UCL-Unlawful Claims Are Valid On The Same Basis As Their FDCPA Claim..........................................................37

II. THE DISTRICT COURT ERRONEOUSLY DISMISSED THE GIOTTAS' DEBT COLLECTION CLAIMS BASED ON A NOTICE-AND-CURE PROVISION THAT DOES NOT APPLY TO THE GIOTTAS' CLAIMS OR TO OCWEN ..........................................................................................................38

A.  The FDCPA And Rosenthal Act Preclude The Notice And Cure Provision From Annulling Or Altering FDCPA Duties Imposed On Debt Collectors ...........................................................................................40

B.  The Notice-And-Cure Provision Does Not Apply To The Giottas' Claims That Ocwen Violated Extra-Contractual Duties To Disclose The Character And Amount Of The Fees Charged.........................................44

C.  The Notice-And-Cure Provision Does Not Apply To Ocwen..................49

1.  The District Court Correctly Found That Notice-And-Cure Is Limited To Disputes With The Giottas' Lender................................................50

2.  The District Court Erred By Finding "Lender" Includes Ocwen Based on the Giottas' Loan Modification ....................................................51

a.  It Is Reasonable That The Loan Modification Used "Lender" And "Servicer" Interchangeably, While The Deed Of Trust Used Those Terms More Precisely ...................................................................52

b.  It Is Unreasonable To Read The Lending Agreements As Including Ocwen In The Term Lender In Deed Of Trust Provisions Unrelated To Loan Repayment ....................................................................56

CONCLUSION ..................................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Arroyo v. Solomon & Solomon, P.C.,*
  2001 WL 1590520 (E.D.N.Y. Nov. 16, 2001) .....................................43

*Baker v. G. C. Servs. Corp.,*
  677 F.2d 775 (9th Cir. 1982) .................................................................35

*Belcher v. Ocwen Loan Servicing, LLC,*
  2016 WL 7243100 (M.D.Fla. Dec. 15, 2016) ....................................46

*Biller v. Toyota Motor Corp.,*
  668 F.3d 655 (9th Cir. 2012) ................................................................45

*Block v. Seneca Mortg. Servicing,*
  --- F.Supp.3d ---, 2016 WL 6434487 (D.N.J. 2016)............................56

*Bradley v. Franklin Collection Serv., Inc.,*
  2011 WL 13134961 (N.D.Ala. Mar. 24, 2011)....................................31

*Breyer v. Countrywide Home Loans Servicing LP,*
  2008 WL 1791506 (W.D.Wash. Apr. 18, 2008) .................................47

*Charles v. Deutsche Bank National Trust Co.,*
  2016 WL 950968 (S.D.Fla. Mar. 14, 2016) .......................................48

*Cirino v. Bank of Am., N.A.,*
  2014 WL 9894432 (C.D.Cal. Oct. 1, 2014) .......................................44

*Clark v. Capital Credit & Collection Services,*
  460 F.3d 1176 (9th Cir. 2006)........................................................ *passim*

*Colon v. Nationstar Mortgage, LLC,*
  2015 WL 7422598 (S.D.Fla. Nov. 17, 2015).....................................46

*Connors v. Home Loan Corp.*
  2009 WL 1615989 (S.D. Cal. June 9, 2009) ......................................58

*Corley v. United States*,
   556 U.S. 303 (2009) .........................................................................34

*Daniel v. Select Portfolio Servicing, LLC*,
   159 F.Supp.3d 1333 (S.D. Fla. 2016) .......................................... 31, 36

*Datta v. Asset Recovery Sols., LLC*,
   191 F. Supp. 3d 1022 (N.D.Cal. 2016)..............................................38

*Derr v. Kimball, Tirey & St. John LLP*,
   2012 WL 12874923 (S.D.Cal. Aug. 14, 2012)....................................41

*Donohue v. Quick Collect, Inc.*,
   592 F.3d 1027 (9th Cir. 2010).................................................. *passim*

*Dore v. Arnold Worldwide, Inc.*,
   139 P.3d 56 (Cal. 2006) ....................................................................52

*Dougherty v. Bank of Am., N.A.*,
   177 F. Supp. 3d 1230 (E.D. Cal. 2016) (E.D. Cal. 2015)....................54

*Dougherty v. Wells Fargo Home Loans, Inc.*,
   425 F. Supp. 2d 599 (E.D.Pa. 2006)..................................................37

*Dowdy v. Solutia Healthcare TAS, Inc.*,
   2006 WL 3545047 (M.D.Tenn. Dec. 8, 2006) ............................ 31, 37

*Dunn v. GMAC Mortg., LLC*,
   2011 WL 1230211 (E.D.Cal. Mar. 28, 2011) ............................. 53, 55

*Duraney v. Washington Mut. Bank F.A.*,
   2008 WL 4204821 (W.D.Pa. Sept. 11, 2008), *aff'd sub nom.* 388 F. App'x 102
   (3d Cir. 2010)...................................................................................31

*Eads v. Wolpoff & Abramson, LLP*,
   538 F. Supp. 2d 981 (W.D.Tex. 2008) ...............................................43

*Eger v. Messerli & Kramer, P.A.*,
   2015 WL 3915776 (D. Minn. June 25, 2015) .....................................36

*EIG Global Energy Partners, LLC v. TCW Asset Management Co.*,
   2012 WL 5990113 (C.D.Cal. Nov. 30, 2012).....................................55

*Estep v. Federal Home Loan Mortg. Corp.*,
  2014 WL 1276495 (S.D.W.Va. Mar. 27, 2014) .................................................47

*Fields v. Wilber Law Firm, P.C.*,
  383 F.3d 562 (7th Cir. 2004) ....................................................... *passim*

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016)...................................................................4

*Galope v. Deutsche Bank Nat'l Trust Co.*,
  666 F.App'x 671 (9th Cir. 2016) ............................................ 51, 53, 57

*Gerber v. First Horizon Home Loans Corp.*,
  2006 WL 581082 (W.D.Wash. Mar. 8, 2006)............................................. 46, 48

*Goins v. JBC & Assocs., P.C.*,
  352 F. Supp. 2d 262 (D.Conn.2005) ....................................................43

*Gomez v. Niemann & Heyer, L.L.P.*,
  2016 WL 3562148 (W.D.Tex. June 24, 2016)....................................................31

*Goodrow v. Friedman & MacFadyen, P.A.*,
  788 F. Supp. 2d 464 (E.D.Va. 2011) ....................................................41

*Graham v. Ocwen Loan Servicing, LLC*,
  2016 WL 1573177 (S.D.Fla. Apr. 19, 2016) ................................................ 46, 50

*Grubb v. Green Tree Servicing, LLC*,
  2014 WL 3696126 (D.N.J. July 24, 2014) ....................................................31

*Guerrero v. RJM Acquisitions LLC*,
  499 F.3d 926 (9th Cir.2007)........................................................ 26, 30

*Hayes v. Wells Fargo Bank, N.A.*,
  2015 WL 5707054 (D.Or. Sep. 28, 2015).....................................................47

*Hibbs v. Winn*,
  542 U.S. 88 (2004) .................................................................35

*Hill v. Nationstar Mortg. LLC*,
  2015 WL 4478061 (S.D. Fla. July 2, 2015) ................................................ 47, 48

*Hochberg v. Lenox, Socey, et. al,*
2017 WL 1102637 (D.N.J. Mar. 24, 2017) ........................................41

*Holsinger v. Wolpoff & Abramson, LLP,*
2006 WL 2092632 (N.D.Cal. July 27, 2006) ....................................37

*Holtzapfel v. Wells Fargo Bank, N.A.,*
2013 WL 1337283 (S.D.W.Va. Mar. 29, 2013) .................................47

*In re Robinson,*
2016 WL 4069395 (Bankr. W.D. La. July 28, 2016) .........................43

*Johnson v. Countrywide Home Loans, Inc.,*
2010 WL 5138392 (E.D.Va. Dec. 10, 2010) .....................................47

*Justice v. Ocwen Loan Servicing, LLC,*
2014 WL 526143 (S.D.Ohio Feb. 7, 2014) ........................................23

*Kassbaum v. Steppenwolf Prod., Inc.,*
236 F.3d 487 (9th Cir. 2000) ............................................... 40, 56

*Kaymark v. Bank of Am., N.A.,*
783 F.3d 168 (3d Cir. 2015), *cert. denied sub nom.* 136 S. Ct. 794 (2016) ........42

*Kerns v. U.S.,*
2012 WL 5877479 (E.D.Va. Nov. 20, 2012) .....................................47

*Kim v. Shellpoint Partners, LLC,*
2016 WL 1241541 (S.D.Cal. March 30, 2016) ........................... 39, 46

*King v. Burwell,*
--- U.S. ---, 135 S. Ct. 2480 (2015) ........................................ 53, 56

*Legacy Emanuel Hos p. & Health Ctr. v. Shalala,*
97 F.3d 1261 (9th Cir. 1996) ............................................................34

*Lipscomb v. The Raddatz Law Firm, P.L.L.C.,*
109 F. Supp. 3d 251 (D.D.C. 2015) .................................................42

*Lomboy v. SCME Mortg. Bankers,*
2009 WL 1457738 (N.D.Cal. May 26, 2009) ....................................57

*Lox v. CDA, Ltd.*,
  689 F.3d 818 (7th Cir. 2012)..................................................................26

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988)..................................................................48

*Mattson v. U.S. West Communications*,
  967 F.2d 259 (9th Cir. 1992) .................................................................42

*McDonald v. Sun Oil Co.*,
  548 F.3d 774 (9th Cir.2008) ...................................................................23

*Medrano v. Flagstar Bank, FSB*,
  704 F.3d 661 (9th Cir. 2012)..................................................................57

*Meixner v. Wells Fargo Bank, N.A.*,
  101 F. Supp. 3d 938 (E.D. Cal. 2015) ....................................................54

*Mertan v. Am. Home Mortg. Servicing, Inc.*,
  2009 WL 3296698 (C.D. Cal. Oct. 13, 2009) ........................................58

*Miller v. Safeco Title Ins. Co.*,
  758 F.2d 364 (9th Cir.1985)......................................................................4

*Niyaz v. Bank of Am.*,
  2011 WL 63655 (E.D.Va. Jan. 3, 2011) .................................................47

*Orth v. Universal Underwriters Ins. Co.*,
  284 F.2d 857 (9th Cir. 1960)............................................................ 53, 55

*Palmer v. Truck Ins. Exch.*,
  988 P.2d 568 (Cal. 1999) ................................................................. 53, 55

*Patrick v. Teays Valley Trustees, LLC*,
  2012 WL 5993163 (N.D.W.Va. Nov. 20, 2012)....................................46

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
  107 Cal. App. 4th 516 (Cal.Ct.App. 2003)...................................... 53, 55

*Perez v. Ocwen Loan Servicing, LLC.*,
  2015 WL 9286554 (E.D.Cal. Dec. 21, 2015).........................................23

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d. Cir. 2007) .................................................................49

*Piper v. Portnoff Law Assocs., Ltd.*,
   396 F.3d 227 (3d Cir. 2005) .................................................................41

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) .................................................................3

*Reed v. US Bank N.A.*,
   2015 WL 5042244 (N.D. Cal. Aug. 25, 2015) .....................................58

*Rinaldi v. Green Tree Servicing LLC*,
   2015 WL 5474115 (S.D.N.Y. 2015) .....................................................43

*Rockridge Trust v. Wells Fargo, N.A.*,
   985 F. Supp. 2d 1110 (N.D.Cal. 2013) .................................................38

*Romea v. Heiberger & Assocs.*,
   163 F.3d 111 (2d Cir. 1998) .................................................................41

*Salewske v. Citibank, N.A.*,
   531 Fed.Appx. 752 (6th Cir. 2013) .....................................................57

*Sandoval v. Wolfe*,
   2017 WL 244111 (S.D.Fla. Jan. 19, 2017) ...........................................47

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) .................................................................23

*Schmidt v. Wells Fargo Home Mortg.*,
   2011 WL 1597658 (E.D.Va. Apr. 26, 2011) .........................................46

*Schwartz v. Comenity Capital Bank*,
   2015 WL 410321 (S.D.N.Y. Feb. 2, 2015) ...........................................46

*Sigwart v. U.S. Bank Nat'l Ass'n*,
   2014 WL 1322813 (D.Haw. Mar. 31, 2014) ..................................... 39, 46

*Somers v. Digital Realty Trust, Inc.*,
   850 F.3d 1045 (9th Cir.  2017) ..................................................... 53, 56

ix

*Sotomayor v. Deutsche Bank National Trust Co.*,
   2016 WL 3163074 (S.D.Fla. Feb. 5, 2016) ..........................................47

*St. Breux v. U.S. Bank, N.A.*,
   919 F.Supp.2d 1371 (S.D.Fla. 2013)......................................... 46, 47

*Stovall v. Suntrust Mortg., Inc.*,
   2011 WL 4402680 (D.Md. Sep. 20, 2011)..........................................46

*Swanson v. S. Oregon Credit Serv., Inc.*,
   869 F.2d 1222 (9th Cir.1989)..........................................26

*Taub v. World Fin. Network Bank*,
   950 F.Supp.2d 698 (S.D.N.Y. 2013) ..........................................46

*Tourgeman v. Collins Fin. Servs., Inc.*,
   755 F.3d 1109 (9th Cir. 2014), *as amended on denial of reh'g and*
   *reh'g en banc* (Oct. 31, 2014) .......................................... *passim*

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004)..........................................32

*Wilson v. Trott Law, P.C.*,
   118 F.Supp.3d 953 (E.D.Mich. 2015)..........................................36

*Woods v. U.S. Bank N.A.*,
   831 F.3d 1159 (9th Cir. 2016)..........................................3

*Wornum v. Aurora Loan Servs., Inc.*,
   2011 WL 3516055 (N.D. Cal. Aug. 11, 2011)..........................................58

**Statutes**

15 U.S.C. § 1692..........................................32

15 U.S.C. § 1692a(6) ..........................................23

15 U.S.C. § 1692e .......................................... *passim*

15 U.S.C. § 1692f(1) .......................................... *passim*

15 U.S.C. § 1692n ........................................................ 38, 40, 41

15 U.S.C. §1692g(d) ...................................................... 27, 33

18 U.S.C. §§ 1962(c) ..........................................................1

18 U.S.C. §§ 1962(d) ..........................................................1

28 U.S.C. § 1291 .................................................................3

28 U.S.C. § 1331 .................................................................2

28 U.S.C. § 1332(d)(2) .......................................................2

28 U.S.C. § 1367 .................................................................2

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................... *passim*

Cal. Civ. Code §§ 1788, *et seq.* .................................. *passim*

Cal. Civ. Code. § 1638 ................................................. 40, 56

Cal. Civ. Code § 1641 .................................................. 53, 55

Cal. Civ. Code § 1788.17 ................................... 3, 17, 37, 44

Cal. Civ. Code § 1788.33 ..................................................43

## Other Authorities

123 Cong.Rec. 10241 ........................................................35

Consumer Financial Protection Bureau,
   "What's the difference between a mortgage lender and a servicer?" available at
   http://www.consumerfinance.gov/askcfpb/198/whats-the-difference-between-a-mortgage-lender-and-a-servicer.html ...............................56

FDCPA Senate Rep. 95-382, 1977 WL 16047 (U.S. Senate Aug. 2, 1977) ............32

Merriam-Webster.com Merriam-Webster, n.d. Web. 24 Mar. 2017 ......................24

**Rules**

Fed.R.App.P. 4(a)(1)(A)..............................................................................3

# JURISDICTIONAL STATEMENT

This appeal addresses whether a debt collector's assessment of fees for "Broker Price Opinions" ("BPOs") and "Property Inspections" in monthly mortgage account statements that include hidden add-on charges violates: (i) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, ("FDCPA"); (ii) the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.* ("Rosenthal Act"); and (iii) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

Plaintiff-Appellants are Victor P. Giotta and Loralee Giotta ("Plaintiffs" or the "Giottas"). The remaining Defendant-Appellee on appeal is Ocwen Loan Servicing, LLC ("Ocwen"), the Giotta's mortgage loan servicer. The Giottas are California mortgage borrowers who paid mortgage servicing fees for BPOs and Property Inspections charged by Ocwen that included hidden add-on fees over and above the actual cost of the BPOs or Property Inspections services. Second Amended Complaint ("SAC") ¶¶ 16, 74, 78, 92-100 and 108-114 (ER 102-103, 131, 132-33, 138-140, 142-144.

Before the District Court, the Giottas initially asserted class claims on behalf of a nationwide Class and a California Subclass pursuant to the FDCPA, the Rosenthal Act, and the UCL as well as under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO") and for common law

fraud. SAC ¶¶ 163-260 (ER 158-176). Additional parties were also named in the action before the District Court, including Ocwen's affiliated entities Altisource Solutions, Inc. ("Altisource") and Ocwen Financial Corporation, as well as the executive who controlled Ocwen and its affiliates, William C. Erbey (collectively "Defendants"). *Id.* ¶¶ 17-22 (ER 103-110).

Accordingly, the District Court had subject matter jurisdiction over the Giottas' FDCPA and RICO claims pursuant to 28 U.S.C. § 1331, and could exercise supplemental jurisdiction over the Giottas' Rosenthal Act, UCL and fraud claims pursuant to 28 U.S.C. § 1367. The District Court also had subject matter jurisdiction over the entire action under 28 U.S.C. § 1332(d)(2) because the Giottas and the proposed nationwide class are citizens of different states from Defendants and the amount in controversy exceeds $5 million exclusive of interest and costs. SAC ¶ 23 (ER 110).

After appeal, a Notice of Dismissal was granted by this Court, dismissing all claims against Defendants Altisource, Ocwen Financial and Erbey, which included all claims asserted under RICO and common law fraud. Dkt. 21. The claims that remain on appeal are those asserted against Ocwen pursuant to the FDCPA, the Rosenthal Act, and the UCL.

Accordingly, this Court has jurisdiction because the Giottas appeal the District Court's entry of final judgment in favor of Defendants on all the Giottas' claims. 28

U.S.C. § 1291.  The District Court's Order granting Defendants' motion to dismiss without leave to amend ("District Court Ruling") and associated Judgment were entered on August 24, 2016.  ER 1, 2-17.  The Giottas filed their Notice of Appeal on September 19, 2016, within the 30-day limit of Fed.R.App.P. 4(a)(1)(A).  ER 18-19.

## STATEMENT OF THE ISSUES

1.      Does a debt collector use false, deceptive or misleading representations or means in collecting a debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A), the Rosenthal Act, Cal.Civ.Code § 1788.17 and the UCL unlawful prong, Cal.Bus & Prof.Code § 17200, by billing consumers for BPOs and Property Inspections that include substantial hidden add-on fees?

Circuit Rule 28-2.5 Statement:  The Giottas raised Issue 1 in opposing Defendants' motion to dismiss the Giottas' SAC.  ER 76-79.  The District Court ruled on this issue by granting Defendants' motion to dismiss the SAC.  District Court Ruling, ER 13-15.  This Court reviews the District Court's dismissal of the FDCPA, Rosenthal Act and UCL claims for failure to state a claim *de novo*.  *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

2.      In a question of first impression for federal appellate courts, does a provision in the Giottas' Deed of Trust requiring pre-suit notice and an opportunity

to cure apply to claims that Ocwen violated the FDCPA (and, by extension, the Rosenthal Act and UCL) where those claims rest upon statutory duties created by the FDCPA existing independently of the Deed of Trust, and involve conduct that is not governed by the Deed of Trust?

3.    If the answer to Question 2 is yes, does the Deed of Trust provision requiring pre-suit notice and an opportunity to cure apply to the Giottas' claims against Ocwen, where the provision expressly applies to disputes with the Giottas' "Lender," and Ocwen is the "Loan Servicer" rather than the "Lender" as defined in the Deed of Trust?

Circuit Rule 28-2.5 Statement: The Giottas raised Issues 2 and 3 in opposing Defendants' motion to dismiss the Giottas' First Amended Complaint ("FAC") and SAC.  ER 592-596, 81-84.  The District Court did not address Issue 2, and ruled in favor of the Giottas on Issue 3 by denying Defendants' motion to dismiss the Giottas' FAC (ER 580-582).  Later, the District Court ruled against the Giottas on Issues 2 and 3 by granting Defendants' motion to dismiss the Giottas' SAC.  District Court Ruling at ER 5-10.  This Court reviews the District Court's interpretation of the Giottas' lending agreements *de novo*.  *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (citing *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985)).

# STATEMENT OF THE CASE

## I.    Ocwen Begins Servicing The Giottas' Mortgage And Charges The Giottas For BPOs and Property Inspections

Ocwen's business model is designed to acquire the servicing rights to mortgage loans that are in default so it can collect late charges and other default service fees from borrowers such as the Giottas. SAC ¶¶ 37-42 (ER 116-118). Sometime prior to February 2013, the Giottas fell behind on their home mortgage payments to GMAC Mortgage and thus their mortgage loan became a target for acquisition by Ocwen. *Id*. ¶ 16 (ER 102-103).

Effective February 16, 2013, while the Giottas were in default on their mortgage loan, Ocwen became the Giottas' mortgage loan servicer. SAC ¶ 16 (ER 102-103). As a mortgage loan servicer, Ocwen is hired by mortgage loan lenders (or their successors) to collect monthly payments from borrowers such as the Giottas on the lender's behalf. *Id*. ¶¶ 19, 29-42 (ER 107-108, 113-118). Because the Giottas were in default on their mortgage, Ocwen had the added role of performing and charging the Giottas for certain services to protect the lender's interest in the Giottas' loan. *Id*. ¶¶ 16, 19, 29-42 and 74 (ER 102-103, 107-108, 113-118 and 131). Ocwen procured these services on the lender's behalf, then charged the Giottas fees for these services and included such charges in the Giottas' monthly mortgage statements. *Id*. at 41 (ER 117-118). The Giottas' monthly mortgage payments went to pay these charges before being applied to the Giottas' principal balance. *Id*. ¶ 134 (ER 149).

The default-related services Ocwen procures and charges to borrowers include, *inter alia*, Broker Price Opinions ("BPOs"), property inspections, foreclosure auctions, and title examinations. SAC ¶ 74 (ER 131). Specific to the Giottas, Ocwen billed the Giottas $100.00 for "Property Valuation Expenses" in monthly billing statements dated September 5, 2013, October 17, 2013, November 18, 2013, and December 16, 2014. ER 509, 528, 530 and 537.[1] Ocwen never defines what a "Property Valuation Expense" is, but this appears to be another name for a BPO because Ocwen also charged the Giottas for a similarly-priced "Property Valuation Fee – BPO" on August 30, 2014. ER 533.

Additionally, Ocwen billed the Giottas for Property Inspection Fees as follows: $10.50 on September 5, 2013; $21.00 on October 17, 2013; $31.50 on November 18, 2013; $10.50 on December 17, 2013; $13.25 on November 17, 2014; $13.25 on December 16, 2014; and $13.25 on January 16, 2015. ER 509, 528, 530, 531, 534, 537, and 535. On June 30, 2014, Ocwen billed the Giottas for six Property Inspection Fees at $10.50 each and for two Property Inspection Fees at $15 each. ER 511.

Ocwen's billing statements did not define "Property Valuation Expense" (a/k/a BPO) or "Property Inspection Fee." However, upon becoming the Giottas'

---

[1] The Giottas' statements' total amount due sometimes included outstanding fees for prior services. *See, e.g.,* ER 530.

mortgage loan servicer, Ocwen sent the Giottas descriptions of certain services. ER 281. Ocwen described "Broker Price Opinion (BPO)" as "Brokers or other qualified individuals provide an estimate of the market value of property." *Id*. Ocwen later offered a similar description attached to the Giottas' payment history, which explained "Broker's Price Opinion" by stating "If you become delinquent on your loan, this fee may be charged for determining the value and condition of the property, using a certified Real Estate Agent." ER 516.

The Ocwen description of services also described "Inspection" as "Inspections are performed to ensure that the property is occupied and appropriately maintained." ER 281. Ocwen similarly described "Property Inspection Fee" by stating "If you become delinquent on your loan, this fee may be charged for an inspection of the property to make sure that it is still in good condition." ER 516.

## II. Unbeknownst To The Giottas, Ocwen's Charges Included Substantial Hidden Add-On Fees

At the time Ocwen charged the Giottas for Property Valuation Expenses (a/k/a BPOs) and Property Inspections, the Giottas were unaware that these charges included hidden add-on fees over and above the actual cost of these services. SAC ¶ 138-140 (ER 151-152). Unbeknownst to the Giottas, Ocwen procured these services from its affiliate Altisource. *Id*. ¶ 19 (ER 107-108). In turn, Altisource paid the service provider for the service (*e.g.*, paid the broker for the BPO), added an additional fee on top of what it paid for the service, then passed the charge to Ocwen

who billed the combined fee to the Giottas as the cost of the service (*e.g.* "Property Valuation Expense"). *Id*. ¶¶ 19, 21, 51, 53 and 92-97 (ER 107-108, 109-110, 122-123, and 138-139).

Ocwen's billing statements did not disclose Altisource, nor Altisource's add-on fee. SAC ¶ 108-112 (ER 142-144). Instead, Ocwen's billing statements conveyed the impression that Ocwen billed the Giottas for the actual cost of the Property Valuation Expense (a/k/a BPO) or Property Inspection only. *Id*. For example, the Giottas' September 5, 2013 monthly mortgage statement lists a $100 charge for a "Property Valuation Expense" that was included in the Giottas' total amount due for that month:

| | |
|---|---|
| Curr-Property Valuation Expense: | 100.00 |
| Total Fees/Expense Outstanding: | 260.02 |
| **Total Amount Due:** | 4,024.70 |

ER 509.

As noted above, "Property Valuation Expense" is Ocwen's term for a BPO. SAC ¶ 113 (ER 144). The actual cost of a BPO before Altisource's add-on fee is $20-$30 for a large national loan servicer like Ocwen (though, in reality, brokers typically perform BPOs for free in exchange for sweetheart deals from the servicer such as a guaranteed listing as the broker if the property is foreclosed upon). *Id*. ¶ 92 (ER 138). That means the BPO for which Ocwen billed the Giottas on September 5, 2013 included Altisource's add-on fee of between $70 and $100.

8

Nevertheless, instead of itemizing the $0-$30 BPO fee separately from the $70-$100 Altisource fee (for instance, "BPO - $30, Management Fee - $70") Ocwen grouped both fees together as a "Property Valuation Expense" reportedly costing "$100.00" without disclosing Altisource's involvement, let alone the amount of the fee it was receiving. ER 509. Ocwen's billing statements thus invited the Giottas to conclude that Ocwen charged them for a $100 "Property Valuation Expense", rather than for a $0-$30 "Property Valuation Expense" plus Altisource's $70-$100 add-on fee.

The Giottas could not have discovered the true nature of these charges even by looking beyond their billing statement to other documents Ocwen provided. While the Giottas might have learned from prior mortgage statements that "Property Valuation Expense" means a BPO, ER 533, this would lead them to conclude this charge includes no add-on fee because the name "Broker's Price Opinion" suggests the charge pays the broker performing the service and not an additional third party.

Furthermore, Ocwen's separate descriptions of BPOs and property inspections outside its mortgage statements affirmatively state that Ocwen's charges are only for the work performed by the actual service provider. ER 281, 516. There is no mention of any add-on fee, nor of Altisource, nor of any other entity being involved other than the broker or property inspector. *Id*. Ocwen described charges

for BPOs as being specifically for work performed by "brokers or other qualified individuals" or "a certified Real Estate Agent:"

| Broker Price Opinion (BPO) | Brokers or other qualified Individuals provide an estimate of the market value of property. | $83.00 - $150.00 |
| --- | --- | --- |

| Broker's Price Opinion | If you become delinquent on your loan, this fee may be charged for determining the value and condition of the property, using a certified Real Estate Agent. |
| --- | --- |

ER 281, 516.

Ocwen's descriptions of property inspections similarly reinforce the notion that these charges are for the actual service provided and not for an added fee from a third party:

| Inspection | Inspections are performed to ensure that the property is occupied and appropriately maintained |
| --- | --- |

| Property Inspection Fee | If you become delinquent on your loan, this fee may be charged for an inspection of the property to make sure that it is still in good condition. |
| --- | --- |

ER 281, 516.

Likewise, no other charge identified in Ocwen's schedule of service charges suggests the charge includes any fee charged over and above the fee for the actual

service provided, nor any fee added by an entity other than the entity performing the actual service.  ER 281, 516.

### III.    Ocwen Charged The Giottas Hidden Add-On Fees As Part Of Its Well-Documented Scheme To Overcharge Borrowers For Mortgage Servicing Fees

The hidden add-on fees the Giottas paid Ocwen were part of a wide-ranging scheme the District Court acknowledged is "extremely troubling."  District Court Ruling at ER 2.  Ocwen and its affiliates exploited mortgage servicing's inherent potential for abuse to build what has been described as "a mortgage servicing empire" by overcharging borrowers for mortgage servicing fees.  SAC ¶¶ 1, 37-57 (ER 95, 116-125).

Because mortgage servicers like Ocwen keep and profit from the servicing fees charged to borrowers (such as Property Valuation Expenses and Property Inspection fees), servicers have a powerful incentive to maximize these fees.  SAC ¶¶ 33-35 (ER 114-115).  The lender who hired the servicer lacks incentive to police the servicer to keep these fees reasonable since the borrower pays these fees.  *Id*. And borrowers like the Giottas have limited recourse because they cannot select their loan servicer.  *Id*. ¶¶ 132-133 (ER 148-149.

Ocwen and its affiliates based their mortgage servicing "empire" on deliberately exploiting the potential for abuse inherent in this relationship.  SAC ¶ 37-57 (ER 116-125).  Defendants realized that fees such as the Property Valuation

Expense (a/k/a BPO) and Property Inspection fees charged to the Giottas lacked oversight and were the key to maximizing loan servicing profit. *Id*. Consequently, Ocwen and its affiliates set up an elaborate scheme to overcharge borrowers for these and similar fees, and to hide the overcharges from borrowers and regulators. *Id*.

First, Ocwen's parent company Ocwen Financial Corporation focused on acquiring the servicing rights to mortgages that were already in default or were likely to enter default – *i.e.*, those mortgages rich in opportunities to charge fees such as Property Inspection fees and Property Valuation Expenses. SAC ¶ 18, 38 (ER 104-107, 116-117). The right to service these mortgages was assigned to Ocwen, who became the loan servicer for the Giottas' and other borrowers' loans. *Id*. ¶¶ 18-19 (ER 104-109).

Second, Ocwen spun off the part of its business responsible for procuring services such as Property Inspections and BPOs to form a new entity known as Altisource Portfolio Solutions, S.A. (the "Altisource Parent"). SAC ¶¶ 44-47 (ER 119-120). The Altisource Parent remained controlled by the same cabal of executives – led by William Erbey – who controlled Ocwen. *Id*. ¶ 52 (ER 112). The Altisource Parent's subsidiary, Altisource Solutions, Inc. ("Altisource"), contracted with Ocwen to procure these services including property inspections and BPOs. *Id*. ¶¶ 21, 47 (ER 109-110, 120). This allowed Erbey and his cohorts to inflate the fees for these services by controlling both ends of the transaction, while making it harder

for regulators and borrowers to discover their exorbitant overcharges. *Id*. ¶ 53 (ER 122-123).

Altisource's hidden add-on fees enriched Ocwen as well as Erbey and other executives controlling the scheme, who have reaped unprecedented profits from these charges. SAC ¶¶ 53-54 (ER 122-123). Altisource kicks back a portion of the add-on fees paid by the Giottas and other borrowers to Ocwen's parent company, paying over $72 million before the kickbacks ended during regulatory scrutiny. *Id*. ¶ 54 (ER 123).

Ocwen's scheme ultimately drew the ire of multiple regulators including the Consumer Financial Protection Bureau ("CFPB") and the New York Department of Financial Services. SAC ¶¶ 58-73 (ER 125-130). These investigations resulted in Mr. Erbey's forced "retirement" and consent judgments policing Ocwen's servicing activities. *Id*. ¶¶ 66, 69 (ER 127-128, 129). Notably, the CFPB's consent judgment expressly requires Ocwen to refrain from charging borrowers add-on fees over and above the cost of services it provides, requires that such charges be disclosed in detail to borrowers, and requires that Ocwen's agents such as Altisource agree to abide by these restrictions. *Id*. ¶ 83, ER 135; Ex. 10, §II.A.2 (ER 412-413). Unfortunately, these investigations and consent orders did not prevent Ocwen from charging the Giottas hidden add-on fees, and did not otherwise address the Giottas' claims in this case. *Id*. ¶¶ 5, 73 (ER 97-98, 130).

### IV. The Giottas Commence This Action Against Ocwen

On February 9, 2015, the Giottas sued Defendants under the FDCPA, Rosenthal Act, UCL, RICO and for common law fraud over Ocwen's charges for hidden add-on fees. *See* ER 573. After Defendants moved to dismiss the Giottas' Complaint, the Giottas filed their First Amended Complaint ("FAC") as of right on June 12, 2015. ER 608. Defendants filed three motions to dismiss the Giottas' FAC on July 16, 2015. ER 609. Defendants sought dismissal of the FAC based, in part, on their contentions that: (1) the Giottas inadequately detailed Ocwen's hidden add-on fees, and (2) the Giottas failed to comply with Section 20 of the Giottas' Deed of Trust requiring pre-suit notice and an opportunity to cure ("Notice-and-Cure" provision). *See* ER 580-590.

The District Court initially rejected Defendants' Notice-and-Cure defense because the Notice-and-Cure provision expressly applies to disputes with the Giottas' lender and the Giottas did not sue their lender. District Court Ruling at ER 582. Ocwen never appealed that ruling. The District Court agreed with Defendants that the Giottas' allegations required additional detail, granting Defendants' motions to dismiss with leave to amend on that basis. *Id*. ER 582-590.

Pursuant to the District Court's ruling, the Giottas filed their operative Second Amended Complaint ("SAC") on January 15, 2016. SAC at ER 92. The Giottas' SAC sharpened their allegations by detailing how Ocwen's charges include

Altisource's hidden add-on fee over and above the cost of the actual service. SAC ¶¶ 92-99, 109-114 (ER 138-140, 143-144). On February 29, 2016, Defendants jointly moved to dismiss the Giottas' SAC, repeating their arguments that the Giottas' allegations were inadequate and that the Notice-and-Cure provision barred the Giottas' claims. ER 612; District Court Ruling at ER 5-17.

This time, the District Court that ruled the Notice-and-Cure provision bars the Giottas' claims. District Court Ruling at ER 5-10. While maintaining its prior ruling that the Notice-and-Cure provision is limited to disputes with the Giottas' "Lender", the District Court determined that a modification of the Giottas' repayment terms ("Loan Modification") showed that the parties understood the term "Lender" in the Deed of Trust to include the loan servicer. *Id*. On that basis, the District Court dismissed the entire action. *Id*. at ER 11.

Although it found the Notice-and-Cure provision disposed of the entire action, the District Court also addressed the Giottas' substantive claims. District Court Ruling at ER 11-17. While observing it was a close call (Hearing Tr. at 3:8-22, 4:5-7; ER 22-23), the District Court rejected the Giottas' FDCPA, Rosenthal Act and UCL-Unlawful claims for two reasons. First, the District Court concluded that "Plaintiffs have not alleged facts showing that Ocwen[] or Erbey collected property inspection fees or BPO fees that they were not legally authorized to collect" because the Giottas' "Deed of Trust expressly authorizes Ocwen[] to collect property

inspection and BPO fees." District Court Ruling at ER 14. Second, the District Court found that "Plaintiffs offer no authority for the proposition that Ocwen['s] disclosure of the amount of the BPO fee that it paid Altisource and recouped from Plaintiffs was inadequate because Ocwen Servicing did not *also* obtain and disclose Altisource's breakdown of its cost and profit." *Id*. at ER 15.

On appeal, the Giottas dispute only the District Court's dismissal of their FDCPA claim, along with Rosenthal Act and UCL-Unlawful claims that are derivative of their FDCPA claim, against Ocwen. Unlike the Giottas' RICO and fraud-based claims which targeted the entire Ocwen scheme, the Giottas' debt-collection claims on appeal focus narrowly on Ocwen's practice of including Altisource's hidden add-on fees in the Giottas' charges for Property Valuation Expenses (a/k/a BPOs) and Property Inspections.

## STATEMENT OF FACTS

The operative facts germane to this appeal appear, *supra*, as part of the Statement of the Case.

## STANDARD OF REVIEW

The standard of review appears, *supra*, in Plaintiffs' Circuit Rule 28-2.5 Statements within the Statement of the Issues.

## SUMMARY OF ARGUMENT

The District Court committed three legal errors. **The District Court's first error was dismissing the Giottas' claims that Ocwen violated the FDCPA, Rosenthal Act and UCL by failing to disclose hidden add-on fees in the Giotta's billing statements**. Ocwen sent the Giottas billing statements suggesting charges for Property Valuation Expenses (a/k/a BPOs) and Property Inspections were charges for the actual services provided. In reality, these charges were mostly or entirely Altisource's add-on fees over and above the cost of the BPO or Property Inspection. Billing these fees as "Property Valuation Expense" or "Property Inspection" without disclosing Altisource's add-on fees misrepresented "the character" and "amount" of these charges in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A). This same conduct also violates the Rosenthal Act and the "unlawful" prong of the UCL, which claims are derivative of the FDCPA. Cal.Civ.Code § 1788.17; Cal.Bus. & Prof.Code § 17200.

The District Court dismissed these claims by misconstruing FDCPA § 1692e(2). The District Court stated "Plaintiffs offer no authority for the proposition that Ocwen['s] disclosure of the amount of the BPO fee that it paid Altisource and recouped from Plaintiffs was inadequate because Ocwen Servicing did not *also* obtain and disclose Altisource's breakdown of its cost and profit." District Court Ruling at ER 15. To the contrary, the Giottas submitted substantial authority

17

demonstrating that their claims are plausible, including the statutory language, caselaw from this Court and elsewhere, and the FDCPA's legislative intent. The FDCPA's plain language requires Ocwen to honestly state both the "character" and "amount" of the Giottas' charges and ". . . any services rendered or compensation which may be lawfully received by a debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(A) and (B). The FDCPA's purpose is to enable consumers to "challenge[] the accuracy or legality of the total debt" or simply pay what was demanded. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010). Here, Ocwen's hidden add-on fees grossly exceed the cost of the services for which the charge is supposedly paying, which violates FDCPA requirements and impairs its basic purpose. These same arguments apply as well to the Giottas' Rosenthal Act and UCL claims.

Additionally, the District Court concluded that "Plaintiffs have not alleged facts showing that Ocwen[] or Erbey collected property inspection fees or BPO fees that they were not legally authorized to collect" because the Giottas' "Deed of Trust expressly authorizes Ocwen[] to collect property inspection and BPO fees." District Court Ruling at ER 14. Whether the fees are legally authorized is not an element of – and thus not the correct standard for – Plaintiffs' claims under 15 U.S.C. § 1692e(2). Rather, whether the fees are legally authorized is an element of a different FDCPA violation the Giottas do not allege, 15 U.S.C. § 1692f(1), which prohibits

collecting debts "unless such amount is expressly authorized by the agreement creating the debt." The District Court erred as a matter of law by requiring the Giottas to plead contractual violations necessary to state a Section 1692f(1) claim in order to bring claims under Section 1692e(2)(A), which applies irrespective of any contractual terms.

The District Court's second and third errors involve misapplication of a provision in the Giottas' Deed of Trust requiring pre-suit notice and an opportunity to cure ("Notice-and-Cure" provision).

**The District Court's second error was applying the Notice-and-Cure provision to the Giottas' FDCPA, Rosenthal Act and UCL-Unlawful claims because such a provision cannot be applied to thwart the duties imposed upon debt collectors by the FDCPA and Rosenthal Act.** Those claims implicate statutory duties that are independent from the Deed of Trust and may be adjudicated without analyzing the Deed of Trust, which is silent about the manner in which Ocwen bills the Giottas.

**The District Court's third error was that – even if the Notice-and-Cure provision applies to the Giottas' FDCPA, Rosenthal Act and UCL claims - the District Court erroneously ruled that the Notice-and-Cure provision applies to the Giottas' dispute with Ocwen, their loan <u>servicer</u>.** The Notice-and-Cure provision contained in the original Deed of Trust does not apply to disputes with

"Loan Servicers" such as Ocwen, but expressly applies only to disputes with the Giottas' "Lender." Deed of Trust § 20 and p. 1 (Definition C) (ER 269, 261). The District Court ruled that Ocwen is included in the contractual definition of Lender despite the separate definition of Loan Servicer because a separate modification of the Giottas' repayment schedule (ER 86-91; "Loan Modification") uses the terms "lender" and "servicer" interchangeably. District Court Ruling at ER 4-7. This is an unreasonable and incorrect interpretation of the lending agreements that generates numerous absurd outcomes when applied to provisions in the original Deed of Trust addressing matters other than repayment.

Accordingly, this Court should reverse the District Court's ruling that the Giottas fail to state FDCPA, Rosenthal Act and UCL-Unlawful claims against Ocwen, and reverse the District Court's application of the Notice-and-Cure provision.

## ARGUMENT

## I. THE DISTRICT COURT MISCONSTRUED FDCPA § 1692e TO MEAN THAT DEBT COLLECTORS MAY BILL CONSUMERS FOR BPOs AND PROPERTY INSPECTION FEES THAT INCLUDE HIDDEN ADD-ON CHARGES

The FDCPA was enacted to remedy and eradicate exactly the type of abusive debt collection conduct alleged in this case. There could not be a seemingly stronger case for application of § 1692e of the FDCPA, where, as here, it is alleged that Ocwen engaged in a scheme designed to secretly charge consumers for additional

fees that they have no way of discovering. The District Court, however, failed to even construe or apply § 1692e to the allegations of wrongdoing alleged in the SAC. The District Court's failure even to construe and apply § 1692e – much less do so lawfully and correctly – warrants reversal.

The "False or misleading representation" provision of the FDCPA requires debt collectors such as Ocwen to refrain from using any "false, deceptive or misleading representation or means in connection with the collection of a debt". 15 U.S.C.§ 1692e. Section 1692e(1)-(16) specifies nonexclusive practices constituting "false, deceptive or misleading representations or means in connection with collecting a debt." In the District Court, the Giottas argued the practice defined in subsection e(2) was directly on point in requiring Owen to disclose any hidden add-on charges included within its BPO and Property Inspection charges. Specifically, § 1692e(2)(A) and (B) prohibit Ocwen from misrepresenting the "character, amount, or legal status of any debt" or "any services rendered or compensation received" . . . "by any debt collector for the collection of a debt." Labelling the charges assessed as mere "property inspection" or "property valuation" expenses, without identifying hidden add-on charges, directly violates this provision.

Instead of applying the above language, the District Court dismissed the Giottas' FDCPA and Rosenthal Act claims based on two legal errors. *First,* the District Court failed to apply the language of § 1692e(2) to the alleged facts. Instead,

the District Court stated that the Giottas "offer no authority for the proposition that Ocwen Servicing's disclosure of the amount of the BPO fee that it paid Altisource and recouped from Plaintiffs was inadequate because Ocwen Servicing did not also obtain and disclose Altisource's breakdown of its cost and profit." The District Court overlooked the Giottas proffer of § 1692e(2)'s plain language and case law interpreting that provision, including *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) in which the Seventh Circuit held that hidden add-on charges violate § 1692e(2). *See* ER 76-79.

*Second,* the District Court ruled that the Giottas could not bring a § 1692e(2) claim without alleging that Ocwen was "not legally authorized to collect" BPOs or property inspections. District Court Ruling at ER 14. Section 1692(e)(2)'s plain language imposes no such requirement. The District Court may have borrowed the "debt not legally authorized" requirement from a separate FDCPA provision, namely § 1692f(1), which independently prohibits "unfair or unconscionable practices." However, the Giottas allege no "unfair practices" under § 1692f(1); they instead assert a claim for "false or misleading representation" under § 1692e(2). The District Court erred in requiring the Giottas to plead an "unfair practices" claim to state a separate "false or misleading representation" claim.

## A.      The Giottas Plausibly Allege Ocwen Violated FDCPA § 1692e(2)

The District Court's determination that "no authority" requires Ocwen to disclose add-on charges ignores the FDCPA's plain language, case law and purpose.

### 1.      The FDCPA's Plain Language Provides Authority For Plaintiffs' Claims

The District Court erroneously failed to apply the language of § 1692e(2). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir.2008) ("'our inquiry begins with the statutory text, and ends there as well if the text is unambiguous'").  Section 1692e(2)(A) unambiguously forbids hidden add-on charges by requiring debt collectors to refrain from misrepresenting the "*character*, *amount* and legal status" of debts.[2]   And § 1692e(2)(B) prohibits debt collectors from misrepresenting "*services rendered or compensation which may lawfully received*" by the debt collector.  "Character" means the attributes or features that make up and distinguish someone or something. "Character" No. 2, Merriam-Webster.com Merriam-Webster,

---

[2] Ocwen is a debt collector because Ocwen "regularly collects or attempts to collect" debts from Plaintiffs, 15 U.S.C. § 1692a(6), and acquired the servicing rights to Plaintiffs' mortgage when Plaintiffs were in default.  SAC ¶ 16 (ER 102-103).  *See Perez v. Ocwen Loan Servicing, LLC.*, 2015 WL 9286554, at *2-3 (E.D.Cal. Dec. 21, 2015) (quoting *Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, at *4 (S.D.Ohio Feb. 7, 2014) ("if Ocwen acquired the servicing for the Loans after they were in default, it is a debt collector under the FDCPA").

n.d. Web. 24 Mar. 2017. "Amount" means the total number or quantity. "Amount", *id.* "Service" means the work performed by one who serves. "Service" No. 2, *id.*

The Giottas' claims squarely fit this plain language. The Giottas allege that their debt collector and loan servicer, Ocwen, misrepresented the character and amount they owed for BPOs and Property Inspections without disclosing that those charges included hidden add-on fees over and above the actual cost of the service. SAC ¶¶ 92-98, 108-114, 217 and 218(b) (ER 138-139, 142-144, 168).

Ocwen's billing statements to the Giottas merely identify the charges as "Property Valuation Expense-BPO", "Property Valuation Expense" or "Property Inspection" followed by a dollar amount without any further explanation. SAC ¶¶ 108-109 (ER 142-143); ER 508-511, 526-536 (statements). The billing statements never disclose that these charges are for anything other than the actual cost of the broker's or inspector's service. *Id.* Ocwen reinforced this notion by sending the Giottas separate documents defining these charges as being only for the broker's price opinion or for the property inspection. ER 281 and 516 (descriptions). Thus, the billing statements and explanatory documents Ocwen gave to the Giottas represent that Ocwen's charges for BPOs are for the cost of the broker performing the BPO, and that its charges for Property Inspections are for the cost of the inspector performing the inspection. *Id.* Ocwen never disclosed that its BPO and Property Inspection charges were mostly or entirely Altisource's add-on fees over and above

the cost of the underlying service. SAC ¶¶ 108-110 (ER 142-143). By hiding

Altisource's add-on fees in the charges for the BPO or Property Inspection, and

instead portraying those charges as merely for the cost of the actual service

performed by the broker or inspector, Ocwen misrepresented the "character" and

"amount" of the charges and the nature of the services it rendered in violation of

FDCPA §§ 1692e(2)(A) and (B).

### 2. This Court's Case Law Construing § 1692e(2) Provides Authority For Plaintiffs' Claims

The foregoing statutory analysis of § 1692e(2) is supported by decisions of

this Court. In *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118-22 (9th

Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014), this

Court set the standard for the Giottas' claims.

In *Tourgeman*, this Court reversed entry of summary judgment against the

debtor on FDCPA claims under 15 U.S.C. § 1692e(2)(A). 755 F.3d at 1112, 1118-

22. This Court stated that debt collection communications are misleading in

violation of Section 1692e if they make a "material" misrepresentation. *Id*. at 1119

(quoting *Donohue,* 592 F.3d at 1033. A misrepresentation is material if it "may

frustrate a consumer's ability to intelligently choose his or her response.'" *Id*.

(quoting *Donohue*, 592 F.3d at 1034). Thus, misrepresentations are actionable under

15 U.S.C. § 1692e where the misrepresentation "'would have undoubtedly been a

factor in [the debtor's] decision-making process, and very well could have led to a

decision to pay a debt that he would have preferred to contest." *Id*. (quoting *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012)).

This Court has also explained that the question whether a misrepresentation is "material" in violation of the FDCPA focuses on the "least sophisticated debtor." *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir.2007) (citing *Swanson v. S. Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1989)). "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the [FDCPA]." *Id*.

For example, in *Tourgeman*, this Court held that the debt collector violated FDCPA § 1692e(2)(A) by sending debt collection notices that mis-identified the original creditor. 755 F.3d at 1121. The misrepresentation was material because "the identity of the consumer's original creditor is a critical piece of information" that "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Id*. Even if the consumer ultimately uncovered the original creditor's true identity, he would still have wasted valuable time in doing so, including "some portion of the thirty days that the FDCPA grants to consumers before having to respond to a collection notice[.]" *Id*.

Here, as in *Tourgeman*, Ocwen's misrepresentation was material because the fact that Ocwen's $100 BPO charge was really $0-$30 for the BPO and $30-$100

for Altisource's add-on fee is "critical" information that "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." 755 F.3d at 1121. Had the Giottas known that most or all of Ocwen's charges were really Altisource's add-on fees, they could have charted an appropriate response. They could have disputed the debt under the FDCPA. 15 U.S.C. §1692g(d). They could have sued under the Deed of Trust's requirement that such fees be "reasonable or appropriate." Deed of Trust § 9 (ER 266). They could have turned to regulators such as the CFPB who previously entered a consent judgment prohibiting Ocwen and Altisource from charging hidden add-on fees; indeed, Ocwen's lawyers suggested the Giottas do just that (Hearing Tr. at 14:11-12; ER 33). But Ocwen's misrepresentation of these charges left the Giottas in the dark about the add-on fees, and thereby delayed and otherwise frustrated the Giottas' ability to "intelligently choose" whether to "challenge[] the accuracy or legality of the total debt." *Donohue*, 592 F.3d at 1034.

Furthermore, Ocwen's misrepresentations to the Giottas are more clearly material than naming the wrong creditor was in *Tourgeman*. This Court in *Tourgeman* acknowledged the debt collection letters were materially misleading even assuming the debtor could have reviewed the original bill or made other inquiries to ascertain the original creditor's true identity. 755 F.3d at 1121. But in this case, even if the Giottas had investigated beyond Ocwen's billing statements,

they would have located Ocwen's descriptions of its charges that <u>reinforce</u> the billing misrepresentation. Those descriptions affirmatively state that Ocwen's charges are only for the work performed by the actual service provider, without mentioning any add-on fees. For instance, Ocwen described charges for BPOs as being specifically for work performed by "brokers or other qualified individuals" or "a certified Real Estate Agent:"

| Broker Price Opinion (BPO) | Brokers or other qualified Individuals provide an estimate of the market value of property. | $83.00 - $150.00 |
| --- | --- | --- |

| Broker's Price Opinion | If you become delinquent on your loan, this fee may be charged for determining the value and condition of the property, using a certified Real Estate Agent. |
| --- | --- |

ER 281, 516.

Likewise, neither Property Inspections nor any other charge identified in Ocwen's schedule of service charges suggest that the charge includes any fee charged over and above the fee for the actual service provided, or any fee added by an entity other than the entity performing the actual service. ER 281, 516.

This Court's caselaw thus confirms that Ocwen misrepresented the "character" and "amount" of the charges and the nature of the services it rendered in violation of FDCPA §§ 1692e(2)(A) and (B).

### 3. Other Courts' Decisions Construing § 1692e(2) Also Provide Authority For Plaintiffs Claims

Numerous circuit and district court decisions outside this Circuit support the Giottas' claims. The Seventh Circuit's analysis in *Fields*, 383 F.3d at 565-66 is particularly apposite because it involves an analogous undisclosed add-on fee. There, the plaintiff owed an animal hospital $122.06 for her vet bill, as well as $250 in attorneys' fees the animal hospital incurred in sending her bill to collections, both of which were lawfully payable to the animal hospital pursuant to the plaintiff's contract. *Id.* at 563-64. The debt collector, Wilbur Law Firm, sent the plaintiff a bill for the combined amount of both fees without disclosing that the amount demanded included its add-on attorneys' fees over and above the cost of the actual vet services. *Id.*

Even though the plaintiff in *Fields* legitimately owed both the attorneys' fees and the underlying vet bill pursuant to her contract with the animal hospital, 383 F.3d at 563, the Seventh Circuit found the plaintiff had stated a claim under 15 U.S.C. § 1692e(2) because Wilbur Law Firm's letters failed to separately itemize the two fees. *Id.* at 566. The court of appeals found this was plausibly misleading because it invited the consumer to assume that the total charge was the actual vet bill. *Id.* The court explained "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgably assess the validity of the debt." *Id.*

Here, Ocwen's undisclosed add-on fees are even more misleading than the billing in *Fields*. While the Wilbur Law Firm grouped the two fees under "Account Balance," which could suggest that the charge is the total of multiple fees on the account, Ocwen presented its charges as "Property Valuation Expense," or "Property Inspection," suggesting the fees are purely for the underlying services.

Furthermore, the Seventh Circuit observed that the Wilbur Law Firm's billing was misleading even though the plaintiff might have consulted her original vet bill to clarify the billing statement. 383 F.3d at 566. Unlike Ms. Fields, the "least sophisticated consumer," *Guerrero,* 499 F.3d at 934, cannot ascertain what a "Property Valuation Expense," BPO, or Property Inspection actually costs. So, they have no way to learn that Ocwen's charges include Altisource's add-on fees over and above the cost of these services. And had the Giottas investigated other mortgage servicing paperwork to understand Ocwen's charges, the Giottas would have encountered explanations that compounded Ocwen's misrepresentation by specifying the charges include only the work performed by the actual entity performing the service. *See* ER 281, 516 (stating BPO charge is for work performed by "brokers or other qualified individuals" or "a certified Real Estate Agent" excluding charges added by third parties who did not perform the underlying service).

Consistent with *Fields*, other federal district courts have repeatedly held that conduct such as Ocwen's violates the FDCPA. Indeed, *Daniel v. Select Portfolio Servicing, LLC*, 159 F.Supp.3d 1333, 1335-36 (S.D. Fla. 2016) sustained virtually identical claims where the plaintiff alleged a "$15.00 charge for each property inspection is a false representation of the amount of a debt, as SPS actually only incurred a $12.00 expense." *See also Grubb v. Green Tree Servicing, LLC*, 2014 WL 3696126, at *9 (D.N.J. July 24, 2014) ("Like the letter in *Fields,* the May 1 Letter states, 'as of April 30, 2010, you owe $307,606.12,' but provides no further information regarding how the amount of debt was calculated"); *Gomez v. Niemann & Heyer, L.L.P.*, 2016 WL 3562148, at *6-9 (W.D.Tex. June 24, 2016) (rejecting defense that FDCPA does not require itemizing components of debt); *Bradley v. Franklin Collection Serv., Inc.*, 2011 WL 13134961, at *11 (N.D.Ala. Mar. 24, 2011) (denying debt collector's motion for summary judgment where "defendant's letters to Bradley merely stated that he owed $1,155.02, without specifying the various charges comprising the total amount"); *Dowdy v. Solutia Healthcare TAS, Inc.*, 2006 WL 3545047, at *9 (M.D.Tenn. Dec. 8, 2006) (sustaining FDCPA claim where failure to itemize charges was misleading). *Cf. Duraney v. Washington Mut. Bank F.A.*, 2008 WL 4204821, at *17 (W.D.Pa. Sept. 11, 2008), *aff'd sub nom.* 388 F. App'x 102 (3d Cir. 2010) (dismissing FDCPA claim where "the letter clearly itemized the charges and thus did not mislead Plaintiff").

### 4. The FDCPA's Purpose Provides Authority For The Giottas' Claims

The FDCPA was enacted to "protect consumers from a host of unfair, harassing and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors." FDCPA Senate Rep. 95-382, 1977 WL 16047 at *1-2 (U.S. Senate Aug. 2, 1977). The FDCPA is a remedial statute that must be construed broadly to effectuate these purposes. *See Clark v. Capital Credit & Collection Services,* 460 F.3d 1176 (9th Cir. 2006) (citations omitted); *Tourgeman,* 755 F.3d at 1118. As the Senate Report confirms, § 1692e was enacted to prevent a debt collector from misrepresenting the "amount or nature of a debt." 1977 WL 16047 at *8. "In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004) (citing 15 U.S.C. § 1692).

Prohibiting misleading debt collection is important because it gives consumers the right to know what they are being asked to pay for. The FDCPA entitles consumers to billing statements and other debt collection communications that are clear enough to let the consumer "intelligently choose" whether to "challenge[] the accuracy or legality of the total debt" or simply pay what is demanded to settle their debt. *Donohue*, 592 F.3d at 1034. This choice matters because the FDCPA grants consumers the right to dispute debts, and to have debt

32

collection cease until the disputed debt is validated.  15 U.S.C. §1692g(d).  Thus, by prohibiting misrepresentations of the "character" or "amount" of debts, the FDCPA "ensure[s] that consumers are fully and truthfully apprised of the facts and their rights" in order to "'understand, make informed decisions about, and participate meaningfully in the debt collection process.'"  *Tourgeman*, 755 F.3d at 1122 (quoting *Clark*, 460 F.3d at 1171).

Ocwen subjected the Giottas to the exact abusive debt collection conduct the FDCPA was designed to eradicate.  The SAC details Ocwen's elaborate scheme, acknowledged by the District Court as "extremely troubling" (District Court Ruling at ER 2), to exploit mortgage servicing's potential for abuse by charging the Giottas and other borrowers hidden add-on fees.  SAC ¶¶ 37-57 (ER 116-125).  In light of the FDCPA's purpose, § 1692e(2) entitles the Giottas to billing statements that clearly disclose the character and amount of Ocwen's fees and services so they can "intelligently choose" whether to "challenge[] the accuracy or legality of the total debt" or simply pay what is demanded.  *Donohue*, 592 F.3d at 1034.  By robbing the Giottas of their right to know what they were being asked to pay for, Ocwen violated FDCPA § 1692e(2).

**B.     The District Court Erred In Construing FDCPA § 1692e(2) To Require Allegations That The Fees Were Not Legally Authorized**

The District Court ruled that the Giottas failed to state a claim because "Plaintiffs have not alleged facts showing that Ocwen[] or Erbey collected property

inspection fees or BPO fees that they were not legally authorized to collect." District Court Ruling at ER 14. According to the District Court, the Giottas' "Deed of Trust expressly authorizes Ocwen[] to collect property inspection and BPO fees." *Id*. However, the plain language of § 1692e(2)(A) does not require that Ocwen's misleading charges violate the Deed of Trust to be actionable.

*First,* § 1692e omits a "not legally authorized" element from all sixteen subsections. The District Court may have borrowed the "not legally authorized" language from FDCPA § 1692f(1). Unlike § 1692e, § 1692f prohibits "unfair or unconscionable" debt collection, and subsection (1) defines one such practice as collecting debts that are not "expressly authorized by the agreement creating the debt or permitted by law." The FDCPA language distinguishing between "false and misleading representations" and "unfair and unconscionable" conduct confirms that whether a debt is contractually owed is a separate question from whether attempts to collect that debt are misleading. Indeed, the use of different language by Congress creates a presumption that it intended the terms to have different meanings. *Legacy Emanuel Hos p. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996).

To construe § 1692e(2)(A) as immunizing debt collectors from liability under Section 1692e(2)(A) so long as the debt collector complies with Section 1692f(1) fails to give effect to the FDCPA's independent prohibition on misleading debt collection. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v.*

34

*Winn,* 542 U.S. 88, 101 (2004)) ("'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'"). This Court has rejected interpretations that would similarly gut the FDCPA's substantive protections. *See Tourgeman*, 755 F.3d at 1122 (rejecting interpretation of materiality that would "transform many of the FDCPA's substantive provisions into surplusage, converting any dunning letter bearing a return address and phone number into a communication not misleading by virtue of those features").

Accordingly, this Court has consistently held that the FDCPA protects consumers "regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (quoting 123 Cong.Rec. 10241; Rep. Annunzio's statement that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable and civil manner"). This Court specifically stated in *Tourgeman* that the debt's validity is "immaterial" to whether a debtor states a claim for misrepresenting the "character" or "amount" of that debt under Section 1692e(2)(A). 755 F.3d at 1113 n.2 ("none of [Tourgeman's] claims depend on the validity of the debt"). Similarly, the Seventh Circuit ruled a debt collector can violate § 1692e(2)(A) even if the underlying debt is contractually valid:

> Even if []fees are authorized by contract, as in this case, and even if the fees are reasonable, debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors. This

includes how the total amount due was determined if the demand for payment includes add-on expenses[.]"

*Fields*, 383 F.3d at 565.

Several district courts have reached similar conclusions. In a closely analogous case, one district court sustained claims that a mortgage loan servicer violated 15 U.S.C. § 1692e(2)(A) by charging inspection fees including an undisclosed added markup. *Daniel*, 159 F. Supp. 3d at 1334. The court rejected the loan servicer's argument that the Section 1692e(2)(A) claim was barred because the fees were contractually permitted, explaining that although "the unambiguous language of the mortgage allows the lender to charge Daniel … the gravamen of Daniel's claims is that the property inspections were marked up and that an additional fee was charged, for which no services were rendered." *Id.* at 1336.

Similarly, in *Wilson v. Trott Law, P.C.*, 118 F.Supp.3d 953, 961 (E.D.Mich. 2015), the court addressed property inspection and other mortgage servicing fees. Although the fees were contractually authorized under a mortgage provision similar to the Giottas' Deed of Trust, the court nevertheless found that falsely characterizing inspection and other fees as "corporate advances" plausibly violates Section 1692e(2)(A). *Id. See also Eger v. Messerli & Kramer, P.A.*, 2015 WL 3915776, at *2 (D. Minn. June 25, 2015) ("The Defendant submits . . . it was allowed to recover additional interest and garnishment fees, but those arguments miss the point, which is whether a debt collector can include the disbursements in the outstanding

judgment or whether such amounts should be listed separately"). *See also Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 607–08 (E.D.Pa. 2006) ("Unlike § 1692f, this provision of the FDCPA does not contain an exception for collection of amounts expressly authorized by the agreement creating the debt."); *Holsinger v. Wolpoff & Abramson, LLP*, 2006 WL 2092632, at *9 (N.D.Cal. July 27, 2006); *Dowdy v. Solutia Healthcare TAS, Inc.,* 2006 WL 3545047, at *9 (M.D.Tenn. Dec. 8, 2006) ("Solutia's letter failed to separate any additional costs from the principal balance. *Id.* In other words, the itemization did not identify the sources for the $10,781.06 total despite the form letter's spaces to illustrate how a particular balance was calculated.").

For these reasons, the District Court erred in requiring the Giottas to establish that Ocwen collected debts unauthorized by contract in violation of FDCPA § 1692f(1). There is no such requirement in order to allege Ocwen engaged in misleading debt collection in violation of FDCPA § 1692e(2).

### C. The Giottas' Rosenthal Act And UCL-Unlawful Claims Are Valid On The Same Basis As Their FDCPA Claim

The Giottas' Rosenthal Act and UCL-Unlawful claims are derivative of their FDCPA claim and thus, for the same reasons as outlined above, this Court should reverse the District Court's dismissal of those claims against Ocwen to the extent premised on the FDCPA claim. Cal.Civ.Code § 1788.17; Cal.Bus. & Prof.Code § 17200. *See, e.g., Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1166

(N.D.Cal. 2013) ("Plaintiffs have satisfied the unlawful prong as to Wells Fargo because they have pled causes of action under the FDCPA"); *Datta v. Asset Recovery Sols., LLC*, 191 F. Supp. 3d 1022, 1027-28 (N.D.Cal. 2016) (analyzing motions for summary judgment on FDCPA and Rosenthal Act claims concurrently).

## II. THE DISTRICT COURT ERRONEOUSLY DISMISSED THE GIOTTAS' DEBT COLLECTION CLAIMS BASED ON A NOTICE-AND-CURE PROVISION THAT DOES NOT APPLY TO THE GIOTTAS' CLAIMS OR TO OCWEN

The District Court also dismissed the Giottas' claims for failure to comply with a contractual provision requiring pre-suit notice and an opportunity to cure ("Notice-and-Cure" provision, Deed of Trust § 20; ER 269). District Court Ruling at ER 5-11. Despite Ocwen's vigorous opposition to this lawsuit, the District Court ruled that the Giottas must provide Ocwen an opportunity to cure its FDCPA violations before proceeding. *Id*. The District Court erred as a matter of law in finding the Notice-and-Cure provision applies to the Giottas' claims for three independent reasons.

First, the District Court misconstrued the FDCPA and the Rosenthal Act to allow state contract law to relieve debt collectors of the requirements of the FDCPA and the Rosenthal Act. The FDCPA prohibits state law from annulling or altering its requirements. 15 U.S.C. § 1692n. Moreover, as this Court has already ruled, a debt collector who makes a false or deceptive representation in violation of § 1692e cannot un-ring the bell or obtain a get out of jail free card because § 1692e is a strict

liability provision where a violation occurs when a false representation is made or deceptive conduct takes place.  *Clark*, 460 F.3d at 1175.

Second, the Notice-and-Cure provision expressly applies only to disputes over contractual duties.  It does not apply to violations of federal or statutory duties, such as those the Giottas assert, that exist irrespective of any contractual duty.  Specifically, the Giottas allege Ocwen's hidden add-on fees for BPOs and Property Inspections violate FDCPA, Rosenthal Act and UCL duties that apply irrespective of whether the fees are authorized under the Deed of Trust, which in the Giottas' case is silent about the manner in which Ocwen bills the Giottas for charges.  *See, e.g., Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *6 (S.D.Cal. March 30, 2016) (citing *Sigwart v. U.S. Bank Nat'l Ass'n*, 2014 WL 1322813, at *6–7 (D.Haw. Mar. 31, 2014) (finding similar notice-and-cure provision did not apply to claims the defendant violated duties arising "under statute, not under the agreement").

Third, even if the Notice-and-Cure provision applied to the Giottas' FDCPA, Rosenthal Act and UCL claims, the Notice-and-Cure provision does not apply to the Giottas' dispute with Ocwen.  The Notice-and-Cure provision applies only to disputes with the Giottas' "Lender" which excludes Ocwen because the same Deed of Trust provision defines "Loan Servicer" separately from "Lender."  Deed of Trust § 20 (ER 269).  The District Court's ruling to the contrary is an unreasonable interpretation that generates numerous absurd outcomes.  *See Kassbaum v.*

*Steppenwolf Prod., Inc.*, 236 F.3d 487, 491 (9th Cir. 2000) (citing Cal. Civ. Code. §

1638) ("We may not read the contract in a manner that leads to an absurd result").

### A. The FDCPA And Rosenthal Act Preclude The Notice And Cure Provision From Annulling Or Altering FDCPA Duties Imposed On Debt Collectors

The District Court held that the Notice and Cure Provision relieves Ocwen

from its FDCPA duty to disclose add-on charges unless and until a borrower formally

demands such disclosures. District Court Ruling at ER 5-11. That ruling turned the

FDCPA on its head by shifting the burden onto consumers to request the disclosure

of charges that they have no reasonable way of uncovering, rather than having the

debt collector reveal those charges in the first instance as the FDCPA requires. The

District Court's reasoning contravenes the FDCPA's text and this Court's rulings

that the FDCPA is a "strict liability statute" whose provisions cannot be thwarted by

state law or consumer consent. *Clark*, 460 F.3d at 1175.

In enacting the FDCPA, Congress made clear that state law cannot trump the

operation of the FDCPA by promulgating § 1692n of the FDCPA. 15 U.S.C. § 1692n.

This provision plainly states:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection

> such law affords any consumer is greater than the protection
> provided by this subchapter.

15 U.S.C. § 1692n.

Federal courts construing this provision recognize that state laws cannot be applied in such a way as to annul or alter FDCPA requirements. *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 n. 10 (2d Cir. 1998); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 235 n. 10 (3d Cir. 2005) (quoting *Romea*, 163 F.3d at 118 n.10); *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 471 (E.D.Va. 2011) (quoting 15 U.S.C. § 1692n) ("The FDCPA does not "annul, alter, or affect, or exempt" any person from complying with state laws on debt collection practices, "except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."); *Hochberg v. Lenox, Socey, et. al,* 2017 WL 1102637, at *4 (D.N.J. Mar. 24, 2017) (quoting *Piper*, 296 F.3d at 235 n.10) ("Moreover, if, as Defendants assert, New Jersey state law did indeed conflict with the FDCPA, "it would be state law and not the FDCPA that would have to yield."); *Derr v. Kimball, Tirey & St. John LLP*, 2012 WL 12874923, at *2 (S.D.Cal. Aug. 14, 2012) (quoting 15 U.S.C. § 1692n) ("Defendants have not cited any legal authority for the proposition that any of their specific litigation activities are privileged from liability under the FDCPA or the Rosenthal Act….Finally, "the statute preempts state laws 'to the extent that those laws are inconsistent with any provisions of [the FDCPA]'").

41

Moreover, a debt collector cannot "cure" a misleading or false claim under §

1692e because liability attaches when the misrepresentation is made or the deceptive

conduct occurs. As this Court has held, the FDCPA is a strict liability statute. *Clark*,

460 F.3d at 1175. Ocwen's § 1692e violation was complete and liability arose on

the date its billing statements were sent. *See Mattson v. U.S. West Communications,*

967 F.2d 259, 261 (9th Cir. 1992). Ocwen could not thereafter undo that wrong. This

Court recognizes that the FDCPA does not allow a wrong to be undone by the debt

collector's subsequent action:

> Quick Collect suggests that a complaint, because it can be
> corrected by amending the offending pleading, should not
> constitute an actionable communication. But all communications
> can be "amended" in this way by simply sending out a
> subsequent communication correcting the error. Sections 1692e
> and 1692f do not suggest that otherwise unlawful representations
> are permitted so long as they are followed up, at some later time,
> with a communication correcting the statements that gave rise to
> the communication's unlawful nature. We see no reason to treat
> complaints differently where there was no effort to correct the
> error before an answer was filed.

*Donohue*, 592 F.3d at 1032. *See also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168,

178 (3d Cir. 2015), *cert. denied sub nom.* 136 S. Ct. 794 (2016) ("We agree that

simply because a complaint is amendable is not a justification for removing it from

the protections of the FDCPA."); *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109

F. Supp. 3d 251, 263 (D.D.C. 2015) ("Were it otherwise, defendants could make

whatever false and deceptive statements they liked and escape liability by simply

correcting them after a tenant identified the error or by pointing out that a tenant failed to do so.")[3]

Thus, state contract law cannot be used to relieve debt collectors of their disclosure obligations under § 1692e. As this Court observed in *Clark*, 460 F.3d at 1171, n. 5:

> Out of an abundance of caution, we further note what should be obvious: a consumer's consent cannot waive protection from the practices the FDCPA seeks to eliminate, such as false, misleading, harassing or abusive communications. Permitting such a waiver would violate the public policy goals pursued by the FDCPA.[4]

Here, likewise, the FDCPA does not permit the Notice and Cure provision to be applied in a way that allows a debt collector to engage in false, misleading, harassing or abusive communications, so long as the consumer does not object in writing. The

---

[3] *See also Eads v. Wolpoff & Abramson*, *LLP*, 538 F. Supp. 2d 981, 986 (W.D.Tex. 2008) (debt collector's later amendment of state court complaint dropping fee demand did not obviate FDCPA claim); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262 (D.Conn.2005) (holding that the defendants violated the FDCPA by overstating the amount of debt due though they later clarified their misrepresentation); *Arroyo v. Solomon & Solomon, P.C.*, 2001 WL 1590520, at *12 (E.D.N.Y. Nov. 16, 2001) ("Defendant has no right under the FDCPA to 'cure' his misrepresentation."); *Rinaldi v. Green Tree Servicing LLC*, 2015 WL 5474115, at *3 (S.D.N.Y. 2015)("This Court holds that the claims under the FDCPA are not rendered moot by the withdrawal of the claim. If JH Portfolio violated the FDCPA, it did so when the claim was filed.") and *In re Robinson*, 2016 WL 4069395 (Bankr. W.D. La. July 28, 2016)("FDCPA claims for filing a time-barred proof of claim are not rendered moot by the withdrawal of the claim.

[4] The Rosenthal Act likewise provides "Any waiver of the provisions of this title is contrary to public policy, and is void and unenforceable." Cal.Civ.Code § 1788.33.

District Court erred in construing the FDCPA and Rosenthal Act to allow debt collectors to avoid their disclosure duties unless such disclosures are first requested by a consumer.[5]

### B. The Notice-And-Cure Provision Does Not Apply To The Giottas' Claims That Ocwen Violated Extra-Contractual Duties To Disclose The Character And Amount Of The Fees Charged

As explained above, the District Court misunderstood the Giottas' FDCPA claim as implicating Ocwen's contractual authorization to bill the Giottas for Property Valuation Expenses and Property Inspections, rather than implicating the FDCPA's separate statutory prohibition against misleading debt collection. *Supra* §I.B; District Court Ruling at ER 8 ("All the claims arise from the property inspections and BPOs obtained by Ocwen[] and charged to the Giottas pursuant to the terms of the Deed of Trust"). For instance, the District Court relied heavily on *Cirino v. Bank of Am., N.A.*, District Court Ruling at ER 8-9, where, unlike here, the claims were expressly contractual. 2014 WL 9894432, at *11 (C.D.Cal. Oct. 1, 2014) (applying choice of law provision to claims that "depend on the proposition that those fees are impermissible under [plaintiff's] Deed of Trust").

---

[5] The foregoing analysis applies equally as well to the Giottas' Rosenthal Act claims. Federal judicial interpretations of the FDCPA are incorporated into the Rosenthal Act by Civil Code § 1788.17.

The Giottas' FDCPA, Rosenthal Act and UCL-Unlawful claims are not subject to the Notice-and-Cure provision. The Notice-and-Cure provision's plain language is expressly limited to disputes over contractual duties, applying only to a lawsuit that "arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument." Deed of Trust § 20, ER 269. Ocwen's misleading billing is not an action taken pursuant to the Deed of Trust, and breached no duty owed thereunder, because no Deed of Trust provision addresses the manner in which Ocwen identifies charges in the Giottas' monthly billing statements. Indeed, the Giottas expressly pled that they allege no breach of the Deed of Trust. SAC ¶ 162 (ER 157). Thus, the Notice and Cure provision's plain language excludes the Giottas' claims. *See Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662 (9th Cir. 2012) (citations omitted) (California law requires applying contracts' plain language unless it produces an absurd result).

While Plaintiffs are unaware of any court of appeals that has analyzed this type of notice-and-cure provision, the district courts' emerging consensus is that whether the provision governs a claim turns on whether the claim implicates contractual duties. The District Court believed that courts are split on this issue. District Court Ruling at ER 8. To the contrary, district courts have consistently

recognized that the dispositive question is whether the claims are premised on duties that arise from the contract.

Where claims allege violations of statutory duties, district courts in this Circuit and nationwide have rejected notice-and-cure defenses – including in lawsuits claiming Ocwen violated FDCPA duties. *See Sigwart*, 2014 WL 1322813 (citations omitted) ("Hawai'i statute, and not the Mortgage, creates the specific requirements that Plaintiff alleges Defendants have violated"); *Belcher v. Ocwen Loan Servicing, LLC*, 2016 WL 7243100, at *4 (M.D.Fla. Dec. 15, 2016) (quotation omitted) ("[b]ecause the causes of action arise directly from alleged deceptive business practices that are prohibited by the FDCPA and FCCPA, rather than the mortgage itself…the notice-and-cure provision is inapplicable"); *Graham v. Ocwen Loan Servicing, LLC*, 2016 WL 1573177, at *4 (S.D.Fla. Apr. 19, 2016) (rejecting notice-and-cure defense because "this case arises from distinct statutory duties imposed on loan servicers").[6]

_____

[6] *See also Kim,* 2016 WL 1241541, at *7 (citation omitted); *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, at *2-3 (W.D.Wash. Mar. 8, 2006); *St. Breux v. U.S. Bank, N.A.*, 919 F.Supp.2d 1371, 1376 (S.D.Fla. 2013); *Taub v. World Fin. Network Bank*, 950 F.Supp.2d 698, 701-02 (S.D.N.Y. 2013); *Schwartz v. Comenity Capital Bank*, 2015 WL 410321, at *11 (S.D.N.Y. Feb. 2, 2015) (citation omitted); *Colon v. Nationstar Mortgage, LLC*, 2015 WL 7422598, at *2 (S.D.Fla. Nov. 17, 2015); *Patrick v. Teays Valley Trustees, LLC*, 2012 WL 5993163, at *3-5, 9 (N.D.W.Va. Nov. 20, 2012); *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *1, 3-4 (E.D.Va. Apr. 26, 2011) (citations omitted); *Stovall v. Suntrust Mortg., Inc.*, 2011 WL 4402680, at *1, 7 (D.Md. Sep. 20, 2011); *Breyer v.*

On the other hand, where claims are premised on contractual duties, district courts have enforced notice-and-cure provisions. *See Sotomayor v. Deutsche Bank National Trust Co.*, 2016 WL 3163074, at *2 (S.D.Fla. Feb. 5, 2016) (citing *St. Breux v. U.S. Bank, N.A.*, 919 F.Supp.2d 1371, 1376 (S.D.Fla. 2013)) (distinguishing *St. Breux* because, in contrast, the plaintiffs' claims depended on "the terms of the mortgage loan contract); *Estep v. Federal Home Loan Mortg. Corp.*, 2014 WL 1276495, at *3-4 (S.D.W.Va. Mar. 27, 2014) (notice-and-cure applied where plaintiffs did not allege "that deceptive business practices existed independently of the contract").[7]

Tellingly, where disputes entail <u>both</u> contractual and independent duties, courts carefully parse each cause of action to identify the underlying duty, applying notice-and-cure provisions to <u>only</u> those causes of action premised on a true contractual duty. *See Holtzapfel v. Wells Fargo Bank, N.A.*, 2013 WL 1337283, at *3-5 (S.D.W.Va. Mar. 29, 2013) ("the court must analyze each claim independently to determine whether the notice-and-cure provision applies;" dismissing claims

*Countrywide Home Loans Servicing LP*, 2008 WL 1791506, at *3-5 (W.D.Wash. Apr. 18, 2008) (citations omitted).

[7] *See also Kerns v. U.S.*, 2012 WL 5877479, at *5 (E.D.Va. Nov. 20, 2012); *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *3-4 (S.D. Fla. July 2, 2015); *Sandoval v. Wolfe*, 2017 WL 244111, at *3 (S.D.Fla. Jan. 19, 2017); *Hayes v. Wells Fargo Bank, N.A.*, 2015 WL 5707054, at *4-5 (D.Or. Sep. 28, 2015); *Niyaz v. Bank of Am.*, 2011 WL 63655, at *1-2 (E.D.Va. Jan. 3, 2011); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *1-2 (E.D.Va. Dec. 10, 2010).

premised on contractual duties and sustaining estoppel claim premised on extra-contractual misrepresentations); *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082 at *2-3 (W.D.Wash. Mar. 8, 2006) (notice-and-cure applied to breach of contract claim but not to unjust enrichment claim that "is not strictly 'about' the contract" or to Washington Consumer Protection Act claim that "clearly exists independent of any contract between the parties").[8]

The district courts' emerging consensus is consistent with this Court's precedents adjudicating forum selection clauses, which similarly parse claims to distinguish between contractual and extra-contractual duties. In applying the forum selection clause in *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), this Court found "[e]ach of these claims relates in some way to rights and duties enumerated in the [contract] [and] cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* This reasoning is

---

[8] An arguable outlier is *Charles v. Deutsche Bank National Trust Co.*, 2016 WL 950968, at *2-3 (S.D.Fla. Mar. 14, 2016). Instead of parsing the claims to determine whether they entailed statutory or contractual duties, the court applied a "but-for" test, holding the notice-and-cure provision applied because "but-for" the parties' contractual relationship, the dispute would not have arisen. *Id.* (citations omitted). However, the court cited several of the above cases and appeared implicitly to adopt the holding of *Hill*, which the court noted had "strikingly similar facts." *Id.* Since *Hill* applied notice-and-cure to claims premised on contractual duties by alleging the defendants "violated Paragraph 9 of the mortgage contracts," this suggests the court in *Charles* found *Hill*'s reasoning persuasive. *Hill*, 2015 WL 4478061, at *3-4. For this reason, *Charles* is not inconsistent with the district courts' emerging consensus on this issue.

consistent with the above district court decisions and shows the Giottas' claims fall outside the Notice-and-Cure provision because the Giottas' claims relate to rights and duties enumerated in the FDCPA, Rosenthal Act and UCL, and can be adjudicated without analyzing whether Ocwen complied with the Deed of Trust.

An analogous decision in which the Second Circuit Court of Appeals applied the same principles confirms that the Giottas' claims fall outside the scope of the Notice-and-Cure provision.  In *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 387-392 (2d. Cir. 2007), the court of appeals determined the plaintiff's Copyright Act claims, unlike his contract claim, fell outside the forum selection clause:

> To decide whether Phillips' copyright claims arise out of the agreement, we are therefore required to determine if Phillips' rights – here predicated on valid ownership of the copyrights to the 15 songs – originate from the recording contract.  We hold they do not.  Appellant does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work[.]

*Id*. at 390, 392 (citations omitted) (explaining the court must "focus on the source of the rights or duties sought to be enforced").  Likewise, the Giottas do not rely on the Deed of Trust to establish their right to truthful billing disclosures, but instead rely on the FDCPA, Rosenthal Act and UCL.

## C.     The Notice-And-Cure Provision Does Not Apply To Ocwen

Even if the Notice-and-Cure provision could apply to the Giottas' statutory, extra-contractual FDCPA, Rosenthal Act and UCL claims against their <u>lender</u>, the District Court nevertheless erred in applying the Notice-and-Cure provision to

claims against Ocwen – their <u>loan servicer</u>.  The Notice and Cure provision expressly applies only to disputes with the "Lender," and the District Court erred in ruling that Ocwen is the "Lender."

### 1. The District Court Correctly Found That Notice-And-Cure Is Limited To Disputes With The Giottas' Lender

Consistent with other well-reasoned federal court decisions, the District Court initially and correctly ruled that the Notice-and-Cure provision, on its face, applies only to claims against the Lender.  Order on MTD FAC at ER 580-582.  *See also Graham*, 2016 WL 1573177, at *4 ("[T]his notice-and-cure provision applies only to disputes between Plaintiff and his lender…[t]he clause imposes no such obligations regarding disputes Plaintiff may have with [Ocwen], which services the loan").  Ocwen never appealed that ruling.

The Deed of Trust requires pre-suit notice of disputes about the Giottas' "Lender's" actions.  Deed of Trust § 20 (ER 269) ("Neither Borrower nor Lender may commence, join or be joined to any judicial action… that arises from the other party's actions…until such Borrower or Lender has notified the other party…").  The Deed of Trust states that the "'Lender' is BankUnited, FSB."  *Id*. at ER 261, Definition (C).  In the same § 20 containing the Notice and Cure provision, the Deed of Trust defines "Loan Servicer" as the entity that "collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations," which includes Ocwen.  *Id*. at ER 269.

By expressly limiting Notice-and-Cure to disputes over the "Lender's" actions, while defining "Loan Servicer" as distinct from "Lender" in the same breath, the Deed of Trust unambiguously does not require pre-suit notice for the Giottas' claims against their "Loan Servicer" Ocwen. That makes sense because the Notice-and-Cure provision only applies to disputes over contractual duties (*supra* §II.B) and borrowers cannot sue loan servicers for breaching loan contracts like the Deed of Trust. *Galope v. Deutsche Bank Nat'l Trust Co.*, 666 F.App'x 671, 674 (9th Cir. 2016) (citations omitted) (affirming dismissal of borrower's contract claims against servicer because "there is no contractual relationship between a mortgagor and a loan servicer").

### 2. The District Court Erred By Finding "Lender" Includes Ocwen Based On The Giottas' Loan Modification

Despite agreeing that Notice-and-Cure is limited to disputes with the "Lender", and despite acknowledging the Deed of Trust's separate definition of "Loan Servicer," the District Court nevertheless determined that Ocwen is included in the Deed of Trust's definition of "Lender" based on the Giottas' subsequent Loan Modification. District Court Ruling at ER 5-8. Critically, the District Court never concluded that the Loan Modification expressly re-defines the Deed of Trust's definitions of "Lender" and "Loan Servicer". Instead, the District Court agreed with Ocwen that because the Loan Modification refers to the lender and servicer interchangeably when discussing repayment terms, it shows that "the parties **always**

understood the term 'Lender' to include servicer, both when they executed the referenced Security Instrument – here, the Deed of Trust – and later when they executed the Loan Modification." *Id*. at ER 6 (emphasis added).

As explained below, the lending agreements can only be reasonably interpreted as preserving the Deed of Trust's distinction between "Lender" and "Loan Servicer", notwithstanding the Loan Modification's interchangeable use of those terms, and the District Court's interpretation of the lending agreements is unreasonable. "'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over.'" *Dore v. Arnold Worldwide, Inc.*, 139 P.3d 56, 61 (Cal. 2006) (quotation omitted).[9]

  a. **It Is Reasonable That The Loan Modification Used "Lender" And "Servicer" Interchangeably, While The Deed Of Trust Used Those Terms More Precisely**

The only reasonable reading is that the Loan Modification's interchangeable use of lender and servicer is compatible with the Deed of Trust's distinction between "Lender" and "Loan Servicer" in provisions, like Notice-and-Cure, where that distinction is meaningful. The typical presumption that a contractual term carries the same meaning throughout the contract is rebutted where the context makes clear

_____

[9] California and Federal law govern interpretation of the agreements. District Court Ruling at ER 6 (citing Deed of Trust ¶ 16 and Loan Modification).

the parties contemplated differently. *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 527 (Cal.Ct.App. 2003) (citing Cal.Civ.Code § 1641 and *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 574 (Cal. 1999); *Dunn v. GMAC Mortg., LLC*, 2011 WL 1230211, at *4 (E.D.Cal. Mar. 28, 2011); *Orth v. Universal Underwriters Ins. Co.*, 284 F.2d 857, 860 (9th Cir. 1960). *See also Somers v. Digital Realty Trust, Inc.*, 850 F.3d 1045, 1049 (9th Cir. 2017) (citing *King v. Burwell*, --- U.S. ---, 135 S. Ct. 2480, 2489 (2015)) (recognizing in interpreting statute that "[t]erms can have different operative consequences in different contexts").

Here, the contractual documents' respective contexts show the parties intended that the Notice-and-Cure provision's use of "Lender" excluded the Loan Servicer. The Notice and Cure provision speaks only of claims against "the other **party**." Deed of Trust § 20 (ER 269) (requiring notice of any lawsuit "that arises from the other **party's** actions" or "alleges that the other **party** has breached" the lending agreement; requiring borrower must have "afforded the other **party** hereto an opportunity to cure) (emphasis added). By referring repeatedly to "the other party," the Notice and Cure provision's context shows its use of Lender cannot include the Loan Servicer because the loan servicer is not a "party" to the Deed of Trust as this Court and district courts throughout this Circuit have consistently found. *Galope*, 666 F.App'x 671, 674, at *2 (citations omitted) ("there is no contractual relationship between a mortgagor and a loan servicer").

In contrast, the Loan Modification's context shows its interchangeable use of lender and servicer is confined to loan repayment provisions where the lender-servicer distinction is immaterial. The Loan Modification expressly governs and is limited to only "the time and manner of payment" of the Giottas' mortgage, its provisions deal exclusively with extended loan repayment, and it makes clear "**[e]xcept as specifically provided in this Agreement, the Note and Security Instrument will remain unchanged[.]**" Loan Modification at p. 1 and ¶¶ 7 and 9 (ER 86, 88) (emphasis added). Because it modified loan repayment terms exclusively, the Loan Modification could use lender and servicer interchangeably because the lender-servicer distinction is immaterial with respect to loan repayment. *See, e.g., Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1258 (E.D. Cal. 2016) (E.D. Cal. 2015) (referring to "lender/servicer" when discussing duties respecting loan repayment); *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 952 (E.D. Cal. 2015) (same). Thus, it was not the game-changer the District Court believed when the Loan Modification twice referred to lender and servicer interchangeably.

This context also shows the District Court was wrong to rely on the provision stating the Loan Modification controls in the event of a conflict with the Deed of Trust (District Court Ruling at ER 7) because these provisions used the terms in separate contexts with different purposes. *See, e.g., EIG Global Energy Partners,*

*LLC v. TCW Asset Management Co.*, 2012 WL 5990113, at *6 (C.D.Cal. Nov. 30, 2012) (agreeing that "§ 4.6 of the Omnibus Agreement and § 5.1 [sic] LLC Agreement do not conflict because they address different concerns").

Similarly, the District Court's belief that no authority permits "the same contract term" to "have different meanings in a loan modification agreement and in the original loan documents" (District Court Ruling at ER 7) is erroneous. As stated above, the traditional presumption that contractual terms have the same meaning in different provisions is rebutted where, as here, those provisions' context shows the parties intended differently. *See R.J. Reynolds*, 132 Cal.Rptr.2d at 156-161 (citing Cal.Civ.Code § 1641 and *Palmer*, 988 P.2d at 574) (holding that "when reasonably read in context, the phrase 'initial sponsored event' had different meanings in those two disputed [agreement] subsections]"); *Orth*, 284 F.2d at 859-60 (relying on contract law decisions from the U.S. Supreme Court as well as courts in Washington, Missouri and Oklahoma to conclude "[t]he same word may have a different meaning in one part of a contract from that which it has in another if the context plainly commands"); *Dunn*, 2011 WL 1230211, at *4 ("when, as in this case, the [deed of trust's] other provisions demonstrate the word is used in a different sense, the same meaning rule must be disregarded in order to achieve the fundamental goal of contract interpretation and give effect to the parties' mutual intention"). This Court has also applied the principle that "[t]erms can have different operative

consequences in different contexts" when interpreting statutes. *Somers*, 850 F.3d at 1049 (citing *Burwell*, 135 S. Ct. at 2489).

> **b.** **It Is Unreasonable To Read The Lending Agreements As Including Ocwen In The Term Lender In Deed Of Trust Provisions Unrelated To Loan Repayment**

While the Giottas' interpretation is reasonable as explained above, the District Court's interpretation that the parties meant for "Lender" to include the "Loan Servicer" throughout the Deed of Trust, even in provisions unrelated to loan repayment, yields absurd results the parties to the Deed of Trust cannot have intended. *Kassbaum*, 236 F.3d at 491 (citing Cal.Civ.Code. § 1638) ("We may not read the contract in a manner that leads to an absurd result").

Lender-servicer may be a distinction without a difference when it comes to the mechanics of loan repayment, but these entities' distinct roles are critical to other aspects of the mortgage loan. Courts and regulators recognize that "[t]he servicing rights and beneficial ownership interest in a given mortgage note are legally distinct." *Block v. Seneca Mortg. Servicing*, --- F.Supp.3d ---, 2016 WL 6434487, at *1 n.1 (D.N.J. 2016) (citing Consumer Financial Protection Bureau, "What's the difference between a mortgage lender and a servicer?" available at http://www.consumerfinance.gov/askcfpb/198/whats-the-difference-between-a-mortgage-lender-and-a-servicer.html).

This lender-servicer distinction is not academic. It is routinely dispositive in legal disputes. *See, e.g., Galope*, 666 F.App'x at 674 (citations omitted) (affirming dismissal of borrower's suit again servicer because "there is no contractual relationship between a mortgagor and a loan servicer"); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) (noting regulatory distinction between "servicing" versus "the borrower's contractual relationship with the lender" "makes sense"); *Salewske v. Citibank, N.A.*, 531 Fed.Appx. 752, 753 (6th Cir. 2013) (borrowers could not plead wrongful foreclosure claim against loan servicer as opposed to lender).

Consequently, merging "Lender" and "Loan Servicer" throughout the Deed of Trust generates absurd results the parties cannot have intended. Such a reading makes Ocwen a party to all the uniform covenants of the Deed of Trust. *See* Deed of Trust at ER 263 ("Borrower and Lender covenant and agree as follows:" would become "Borrower and [BankUnited, FSB and Ocwen] covenant and agree as follows"). That is an absurd interpretation because loan servicers are not parties to mortgage deeds of trust, as this Court and numerous district courts have consistently held. *Galope*, 666 F.App'x at 674, at *2 (citations omitted) ("there is no contractual relationship between a mortgagor and a loan servicer"). *See also Lomboy v. SCME Mortg. Bankers,* 2009 WL 1457738, at *5 (N.D.Cal. May 26, 2009) ("[A] loan servicer ... is not a party to the Deed of Trust itself"); *Reed v. US Bank N.A.*, 2015

WL 5042244, at *3 (N.D. Cal. Aug. 25, 2015) ("the loan servicer[] was never a party to the deed of trust"); *Wornum v. Aurora Loan Servs., Inc.*, 2011 WL 3516055, at *9 (N.D. Cal. Aug. 11, 2011) ("As the loan servicer, Aurora is not a party to the deed of trust"); *Connors v. Home Loan Corp.* 2009 WL 1615989, at *6 (S.D. Cal. June 9, 2009) ("If ASC is a loan servicer, ASC is not a party to the Deed of Trust"); *Mertan v. Am. Home Mortg. Servicing, Inc.*, 2009 WL 3296698, at *8 (C.D. Cal. Oct. 13, 2009) ("to the extent that AHMSI is in fact merely the loan servicer, AHMSI is not a party to the deed of trust").

If the District Court's reading is correct, then the above caselaw holding borrowers cannot sue their loan servicers directly for deed of trust breaches would not apply to the Giottas. Surely Ocwen does not contend that the Giottas could sue Ocwen for breaching the Giottas' Lender's Deed of Trust obligations.

Just as absurdly, the District Court's reading means the Giottas owe their substantive debt to Ocwen, to whom the loan is secured in addition to the Lender. *See* Deed of Trust at ER 261 (Definition (E)) ("...Borrower owes Lender Five Hundred Thousand and no/100 Dollars" would become "...Borrower owes [BankUnited, FSB and Ocwen] Five Hundred Thousand and no/100 Dollars"); ER 262 (TRANSFER OF RIGHTS IN THE PROPERTY) ("This Security Instrument secures to Lender..." would become "This Security Instrument secures to

[BankUnited, FSB and Ocwen]…").  It is absurd that BankUnited, FSB intended to share the Giottas' debt with all future loan servicers throughout the life of the loan.

## CONCLUSION

The Giottas' FDCPA, Rosenthal Act and UCL claims are valid and not subject to their Deed of Trust's Notice-and-Cure provision.  This Court should reverse the District Court's entry of Judgment against the Giottas as to their FDCPA and Rosenthal Act claims, and as to the Giottas' UCL-Unlawful claim derived therefrom, against Ocwen.

DATED:  April 28, 2017    **FEINSTEIN DOYLE PAYNE**
             **& KRAVEC, LLC**

             By:  _s/Joseph N. Kravec, Jr._
             Joseph N. Kravec, Jr.
             James M. Pietz
             Wyatt A. Lison
             McKean J. Evans
             429 Fourth Avenue
             Law & Finance Building, Suite 1300
             Pittsburgh, PA 15219
             Telephone:  (412) 281-8400
             Email:  jkravec@fdpklaw.com;
             jpietz@fdpklaw.com;
             wlison@fdpklaw.com;
             mevans@fdpklaw.com

             **YUNKER & SCHNEIDER**
             Stephen F. Yunker
             655 West Broadway, Suite 1400
             San Diego, CA 92101
             Telephone:  (619) 233-5500
             Email:  sfy@yslaw.com

**LEVI & KORSINSKY LLP**
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Email: rrivas@zlk.com

*Attorneys for Appellants*

## STATEMENT OF RELATED CASES

Appellants are unaware of any related case pending before this Court.

**Form 8.**  **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>16-16665</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [13,784] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [　　　　　　　]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [　　　　] words or [　　　　] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [ s/Joseph N. Kravec, Jr. ]　　Date [ Apr 28, 2017 ]

("s/" plus typed name is acceptable for electronically-filed documents)

| 9th Circuit Case Number(s) | 16-16665 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Apr 28, 2017 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/Joseph N. Kravec, Jr.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |