# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR P. GIOTTA and LORALEE GIOTTA, on behalf of themselves and all others similarly situated,
Plaintiffs-Appellants,

v.

OCWEN FINANCIAL CORPORATION; et al.,
Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of California, San Jose
Honorable Beth Labson Freeman, United States District Judge
Case No. 5:15-cv-00620-BLF

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Joseph N. Kravec, Jr.
James M. Pietz
Wyatt A. Lison
FEINSTEIN DOYLE PAYNE
 & KRAVEC, LLC
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Email: jkravec@fdpklaw.com;
jpietz@fdpklaw.com;
wlison@fdpklaw.com

Stephen F. Yunker
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 233-5500
Email: sfy@yslaw.com

Rosemary M. Rivas
LEVI & KORSINSKY LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Email: rrivas@zlk.com

# TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................1

II.   THE DISTRICT COURT MISCONSTRUED FDCPA §1692e TO MEAN
THAT DEBT COLLECTORS MAY BILL CONSUMERS FOR BPOs AND
PROPERTY INSPECTION FEES THAT INCLUDE HIDDEN ADD-ON
CHARGES........................................................................................2

    A.    The Plain Language of §1692e Refutes Ocwen's Arguments ..............4

    B.    FDCPA Case Law Refutes Ocwen's Arguments.................................7

    C.    Ocwen's Hidden Fees Are Material To Unsophisticated
Consumers .......................................................................................14

    D.    The District Court Erred In Construing §1692e(2)(A) To Require
Allegations That The Fees Were Not Legally Authorized .................19

III.  OCWEN FAILS TO DEMONSTRATE THAT THE CONTRACTUAL
NOTICE AND CURE PROVISION APPLIES TO THIS DISPUTE OVER
EXTRA-CONTRACTUAL DUTIES ..........................................................21

    A.    Ocwen's Appellate Brief Admits – For the First Time – That Pre-Suit
Notice Would Have Been Futile ........................................................22

    B.    Ocwen's Straw Man Arguments Miss the Point – Whether Notice and
Cure Applies Depends On the Right to be Enforced, and Not the
Cause of Action Pled.........................................................................23

    C.    The Giottas Did Not Waive Any of Their Arguments on the Issue of
Whether a Deed's Notice and Cure Provision Applies to Independent
Statutory Duties Involving Conduct Not Governed by the Deed. ......26

    D.    Ocwen Admits that if the Deed's "Lender" Includes The "Loan
Servicer", then the Loan Servicer is a Party To The Deed, Thereby
Upending Both this Court's Case Law and the Basic Nature of the
Relationship......................................................................................27

i

# TABLE OF AUTHORITIES

**Cases**

*Bahamas Sales Associate, LLC v. Byers*,
  701 F.3d 1335 (11th Cir. 2012) ...........................................................................25

*Baker v. G. C. Servs. Corp.*,
  677 F.2d 775 (9th Cir. 1982) ...............................................................................20

*Clark v. Capital Credit & Collection Services, Inc.*,
  460 F.3d 1162 (9th Cir. 2006) ..............................................................................16

*Daniel v. Select Portfolio Servicing, LLC*,
  159 F.Supp.3d 1333 (S.D. Fla. 2016) .................................................................7, 8

*Donohue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ....................................................... 14, 15, 16, 18

*Dougherty v. Wells Fargo Home Loans, Inc.*,
  425 F. Supp. 2d 599 (E.D. Pa. 2006) ....................................................................13

*Eller v. EquiTrust Life Ins. Co.*,
  778 F.3d 1089 (9th Cir. 2015) ................................................................................5

*Fields v. Wilber Law Firm*,
  383 F.3d 562 (7th Cir. 2004) ....................................................................... passim

*Friedman v. AARP, Inc.*,
  855 F.3d 1047 (9th Cir. 2017) ..............................................................................17

*Hahn v. Triumph P'ships LLC*,
  557 F.3d 755 (7th Cir.2009) .................................................................................14

*In re Mercury Interactive Corp. Securities Litigation*,
  618 F.3d 988 (9th Cir. 2010) ................................................................................27

*Langford v. Rite Aid of Alabama, Inc.*,
  231 F.3d 1308 (11th Cir. 2000) ..............................................................................5

*Lox v. CDA, Ltd.*,
689 F.3d 827 (7th Cir. 2012) ........................................................ 14, 17

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ..................................................................25

*Manrique v. Wells Fargo Bank N.A.*,
116 F. Supp. 3d 1320 (S.D. Fla. 2015)...............................................13

*McCann v. Lucky Money, Inc.*,
129 Cal. App. 4th 1382 (2005)................................................................5

*Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*,
228 F.3d 1043 (9th Cir. 2000) ...............................................................5

*Prescott v. Seterus, Inc.*,
635 F. App'x 640 (11th Cir. 2015) ........................................................13

*Sotomayor v. Deutsche Bank Nat'l. Trust Co.*
2016 WL 3163074 (S.D. Fla. Feb. 5, 2016) *as clarified*, 2016 WL 3163075
(Mar. 18, 2016).....................................................................................24

*St. Breux v. U.S. Bank, N.A.*,
919 F. Supp. 2d 1371 (S.D. Fla. 2013)...............................................24

*Tourgeman v. Collins Fin. Servs., Inc.*,
755 F3d 1109 (9th Cir. 2014) ................................................. *passim*

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) ..........................................................1, 6

*Van v. Grant & Weber*,
308 Fed. Appx. 46 (9th Cir 2008) .......................................................25

*Walker v. Countrywide Home Loans*,
98 Cal.App.4th 1158 (2002) .............................................................5, 6

*Western Watersheds Project v. U.S. Dept. of the Interior*,
677 F.3d 922 (9th Cir. 2012) ..............................................................26

**Statutes**

15 U.S.C. § 1692 *et seq.*............................................................ *passim*
15 U.S.C. § 1692e..................................................................... *passim*
15 U.S.C. § 1692e(2) ........................................................ 4, 13, 14
15 U.S.C. § 1692e(2)(A)........................................................ *passim*
15 U.S.C. § 1692e(2)(B) ................................................... 4, 10, 16
15 U.S.C. § 1692f(1) ......................................................................20
15 U.S.C. § 1692n..............................................................2, 21, 25
15 U.S.C. §1692g(d) ....................................................................18
Cal.Bus.&Prof. Code §17200 ........................................................5
Cal.Bus.&Prof. Code §17500 ........................................................5
Cal.Fin.Code §1800 .......................................................................5

**Other Authorities**

123 Cong.Rec. 10241 ...................................................................20

**Rules**

Fed.R.Civ.P. 12(b)(6)............................................................. 4, 17

# I.    INTRODUCTION

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, requires debt collectors such as Ocwen to disclose all material charges in billing statements.  Ocwen argues that the Giottas want a "costs and profits" disclosure.  Rather, the Giottas simply want a disclosure in Ocwen's billing statements that 70-100% of the BPO and Property Inspection charges Ocwen billed were not for those identified services, but instead were hidden add-on fees paid to a third-party vendor affiliate of Ocwen.  It is material to borrowers that the true purpose of 70-100% of a charge is mis-identified in billing statements.  That a disclosure of such charges is not required in other contexts as Ocwen notes is irrelevant.  Congress created the FDCPA to impose these special duties of disclosure on debt collectors.  This Court has recognized this purpose and, like other Circuits, has enforced the FDCPA's heightened disclosure obligations.  *See Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004) (recognizing the FDCPA's purpose); *Fields v. Wilber Law Firm*, 383 F.3d 562 (7th Cir. 2004) (hiding added fee by lumping violates FDCPA); *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F3d 1109 (9th Cir. 2014) (similar).

Ocwen's assertion of a contractual notice and cure defense is unavailing.  Ocwen now concedes in its brief for the first time that notice would have been futile since Ocwen would not have completely cured and a lawsuit would have been needed.  Ocwen Br. at 39.  But even if that were not the case, the contractual notice

1

and cure under the Deed does not apply to independent statutory duties, like those created by the FDCPA, that are not created by the contract. The Deed itself limits the notice and cure to "Lender," which is not Ocwen. Ocwen's attempt to read itself as loan servicer/debt collector into the definition of "Lender" to make itself a party to the Deed is not supported by the contract and would in any event lead to absurd results, such as the principle and interest being owed to Ocwen - the loan servicer/debt collector. Even if state law would allow, application of notice and cure to the debt collector/loan servicer under state law would frustrate the disclosure obligation of the FDCPA and would be preempted under 15 U.S.C. §1692n. Thus, a notice and cure requirement cannot apply here.

## II. THE DISTRICT COURT MISCONSTRUED FDCPA §1692e TO MEAN THAT DEBT COLLECTORS MAY BILL CONSUMERS FOR BPOs AND PROPERTY INSPECTION FEES THAT INCLUDE HIDDEN ADD-ON CHARGES

The District Court dismissed the Giottas' FDCPA claim, summarily stating the Giottas "offer no authority for the proposition that Ocwen Servicing's disclosure . . . was inadequate because Ocwen . . . did not also . . . disclose Altisource's . . . cost and profit". (ER 15) In so ruling the District Court did not cite or apply any law or FDCPA legal standard. The Giottas' opening brief demonstrated the District Court legally erred because the plain language, case law and legislative purpose of the FDCPA provide substantial legal authority requiring Ocwen disclose any material hidden add-on charges pursuant to FDCPA, 15 U.S.C. §1692e. Giotta Br. at 20-33.

2

Ocwen's response presents no basis demonstrating the District Court correctly derived and applied a correct FDCPA legal standard. Instead, Ocwen invents a new legal standard that has no basis under the FDCPA.

According to Ocwen, the FDCPA, as a matter of law, does not require a debt collector to disclose its vendor's "cost and profits." Ocwen Br. at 11. Based upon this novel proposition, Ocwen reasons that, in billing consumers, §1692e allows Ocwen to depict its vendor charges as "BPOs" or "Property Inspections" despite the vast majority of such charges not actually being paid for the BPO or Property Inspection service, but instead were add-on fees (or "profits" to use Ocwen's terminology) paid to a third party – specifically an Ocwen affiliate that simply outsourced the actual BPO and inspection services. Nevertheless, Ocwen contends that the District Court correctly construed §1692e because its disclosures as to the cost of the BPOs and Property Inspections billed to the Giottas purportedly were not false, deceptive or misleading. Ocwen Br. at 13.

Ocwen's newly invented "costs and profits" proposition is contrary to the FDCPA legal authority. Rather, the Giottas claim that Ocwen has a statutory duty under the FDCPA to disclose any hidden collection fees. Giotta Br. at 23-33. This basic statutory protection requires debt collectors to delineate the components of any material charge for services that is added to a consumer's balance, such that an unsophisticated consumer would understand the nature of the charge and be put in

3

the position of challenging the propriety of the charge, if necessary. Thus, whether the hidden added charge is characterized as a "collection fee", "service charge", "corporate advance", "overhead fee", or "cost and profit", the FDCPA requires that charge be described both in "character" and "amount" so that the consumer is put on notice and can act accordingly. The case law and underlying purpose of §1692e fully supports this legal standard. Giotta Br. at 25-33. As demonstrated below, Ocwen's "costs and profits" legal standard is contrary to the governing FDCPA authority.

### A. The Plain Language of §1692e Refutes Ocwen's Arguments

Ocwen simply ignores the plain, statutory language of §1692e(2). That language requires a debt collector to refrain from using any "false, deceptive or misleading representation in connection with the collection of a debt." Furthering this requirement, the FDCPA more specifically requires a debt collector disclose the "character, amount, or legal status of any debt" or "any services rendered or compensation received … by any debt collector for the collection of a debt." 15 U.S.C. §1692e(2)(A) and (B).

The Giottas allege[1] that debt collector Ocwen violated this plain language in charging them for BPOs and Property Inspections that included hidden add-on fees

---

[1] These allegations must assumed to be true because this appeal is from the dismissal of the Giottas' claims under Fed.R.Civ.P. 12(b)(6). *Nat'l Ass'n for*

grossly exceeding the actual cost of these services.  SAC ¶¶ 92-98, 108-114, 217 and

218(b)  (ER  138-139,  142-144,  168).  Ocwen  does  not  dispute  that  it  is  a  "debt

collector" subject to the FDCPA.  Instead, Ocwen maintains the FDCPA does not

require the disclosure of the "costs and profits" of a vendor who performs a service

for a debt collector, and the debt collector then adds the charge for that service to a

consumer's loan balance. Ocwen Br. at 15.

However, Ocwen's "costs and profits" principle is not derived from the

FDCPA statutory language or case law.  Rather, Ocwen cites non-FDCPA cases that

generally discuss the duty of a vendor to disclose its costs and profits in a seller-

buyer or insurer-insured transaction.  Ocwen Br. at 16-18.  These cases generally

hold that a seller has no duty to disclose their profits to customers.  *See Eller v.*

*EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092-93 (9th Cir. 2015).[2]  Ocwen also relies

on *Walker v. Countrywide Home Loans*[3], but this case never addressed the FDCPA

---

*Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000).

[2]  *See* Ocwen Br. at 16, *also citing McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382 (2005)(no requirement for money exchanger to disclose actual rate of exchange under Cal.Bus.&Prof. Code §§17200 and 17500 and Fin.Code §1800, *et. seq.*); *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1313 (11th Cir. 2000)(no duty under mail and wire fraud statutes to disclose higher prices charged to uninsured as opposed to insured consumers).

[3]  In *Walker*, the plaintiffs asserted no FDCPA claim or deceptive billing claim, but argued Countrywide's property inspection fees were "actually a 'disguised' late fee." *Id*. at 1167.  *See id*. at 1165 ("The Walkers argue property inspection fees are

or dishonest billing claims. *Walker* merely held that it was not *per se* unfair for mortgage servicers to use contractors to perform default-related services, and pass the cost on to the borrower. *Walker v. Countrywide Home Loans*, 98 Cal.App.4th 1158, 1177-78 (2002).

Ocwen is therefore deriving and applying an invented legal standard borrowed from the commercial sales or insurance context. It is fallacious to apply a seller-buyer or insurer-insured general rule in the context of the FDCPA regulation of debt collectors. In enacting the FDCPA, Congress imposed special duties on debt collectors, as opposed to sellers or insurers generally. *See Turner*, 362 F.3d at 1226 (citing 15 U.S.C. §1692)("In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers"). As the Senate Report confirms, one such duty the FDCPA imposes on debt collectors is the duty to refrain from misrepresenting the "amount or nature of a debt." Giotta Br. at 32. Since there is no dispute that Ocwen is a debt collector that is subject to these special FDCPA duties, cases discussing the duties of sellers or insurers generally are simply inapposite.

---

'unlawful' late charges that violate provisions of California's Civil and Financial Codes; the fees are 'unfair' in that the utility of charging them to consumers is outweighed by the harm to consumers, they are unethical and they are not permitted by the Walkers' deed of trust; and the fees are 'deceptive' because the Walkers' deed of trust does not authorize them").

## B. FDCPA Case Law Refutes Ocwen's Arguments

The Giottas's opening brief provided a substantial body of FDCPA case law supporting their §1692e claims.[4] Ocwen concedes this body of FDCPA case law sets forth a legal standard to be applied where a debt collector combines distinct types of fees into an "undifferentiated balance". Ocwen explains this standard as follows: "**combining separate and independent categories of fees together into a single, undifferentiated balance is misleading, because it prevents the consumer from evaluating the propriety of each individual category of fees**." Ocwen Br. at 19-20. This is precisely the legal rule that governs the Giottas' FDCPA claims. See Giotta Br. at 24-33. Under application of this legal standard, the Giottas' FDCPA claims are valid.

Accordingly, Ocwen's repeated characterizations of its add-on fee as merely its affiliate's Altisource's "costs and profits" presents the proverbial distinction without a difference. Any such fee may be characterized as a "management fee," "procurement fee," "service fee", "vendor's profit" or otherwise. Whatever it is, it is still subject to disclosure under §1681e because it is being combined with other categories of fees into an "undifferentiated balance".

---

[4]    *See* Giotta Br. at 29-31 (citing, *inter alia*, *Fields*, 383 F.3d at 565-66 (finding undisclosed add-on fee violated FDCPA); *Daniel v. Select Portfolio Servicing, LLC*, 159 F.Supp.3d 1333, 1335-36 (S.D. Fla. 2016) (finding mortgage servicer's undisclosed add-on fee added to property inspection charge violated FDCPA)) (other cites omitted).

Here, the Giottas allege they received a bill for a purported $100 BPO that was really a charge for a $0-30 BPO plus a $70-100 add-on fee. Whatever the purpose of the add-on fee – whether the "profit" of the debt collector's affiliate or otherwise – it must be truthfully and honestly characterized by the debt collector. To be sure, this rule may be peculiar to the debt collection context. But here, Ocwen concedes it was acting as a debt collector and, therefore, assumed this duty to properly characterize the components and amounts of charges it was adding to the Giottas' debt balance.

Ocwen's position that "vendor profits" may be hidden within an "undifferentiated" billing statement is clearly refuted by the FDCPA case law. Giotta Br. at 25-30. The reasoning of the Seventh Circuit in *Fields,* 383 F.3d 562, is directly on point. The *Fields* court sustained virtually identical claims to those here, holding a debt collector violated FDCPA §1692e(2)(A) by lumping its added fee together with the underlying debt in its communications with the debtor. 383 F.3d at 565-66 ("[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgably assess the validity of the debt"). Numerous district courts have also sustained closely similar claims, including *Daniel v. Select Portfolio Servicing, LLC*, 159 F.Supp.3d 1333, 1335-36 (S.D. Fla. 2016) where the court sustained FDCPA claims based on a mortgage servicer (like

Ocwen) charging undisclosed add-on fees for property inspections.  *See* Giotta Br. at 31 (citing cases).

The hidden fee in *Fields* represented the debt collector law firm's attorneys' fees and, therefore, represented a form of the debt collector's service fee that was added to the balance.  Here, in the same vein, the SAC alleges that the debt collector added hidden service fees of its affiliate Altisource, which were then shared with the debt collector. SAC, ¶¶81-100 (ER 134-140) Viewed accordingly, there is no functional difference between the FDCPA claims in the SAC and those found sufficient in *Fields*.

The rationale of *Fields* is based upon the principal that a debt collector must sufficiently describe an amount owed such that an unsophisticated consumer would be put in a position to understand the charge and be able to contest the propriety of the charge, if necessary.  Thus, in *Fields,* the court noted an unsophisticated consumer would not have been able to discern that the hidden added charge consisted of attorneys' fees.  *Id* at 566.  Had the consumer known the added charge was attorneys' fees, the consumer might have challenged the charge as being unauthorized or unreasonable under contract, statutory, or ethical principles.  Here likewise, the failure of Ocwen to sufficiently describe or explain its hidden added charges leaves consumers in the dark about the propriety of the added charges.

In short, the Giottas are not advocating for a duty to disclose "cost and profits". Rather, the Giottas contend that the plain language of §1692e(2)(A) and (B) requires debt collectors, such as Ocwen, to set forth the true nature and amount of all material component parts of an assessed fee. Here, the hidden add-on fees were not nickel-and-dime charges, but vastly exceeded what the actual service provider was paid for performing the BPO or Property Inspection. For instance, Ocwen repeatedly billed the Giottas $100 for a purported BPO, but only $0-30 of that charge paid the entity that actually performed the BPO. SAC ¶¶92-100 (ER 138-140). The remaining $70-100 went to Ocwen's affiliate Altisource as "profit". Altisource, which was formerly part of Ocwen and remains controlled by Ocwen's executives, added this fee as part of a clandestine scheme to increase Ocwen's, its executives', and its affiliates' profits from these services without adding any value. Indeed, Ocwen admits the hidden add-on fee paid for no legitimate service, but was levied purely to enrich Altisource and its owners. *See* Ocwen Br. at 16 ("the supposed 'add-on fee' is simply profit earned by Ocwen's vendor" – namely Ocwen's affiliate Altisource). Altisource's "profits" were then kicked back to Ocwen's parent company – totaling $72 million before the kickbacks ceased amidst regulatory scrutiny. SAC ¶54 (ER 123).

Perhaps believing this Court will overlook these allegations in the SAC, Ocwen nevertheless states, "The Giottas never allege that the fees were for other

than property inspections and property valuations, and they never allege that Ocwen did not pay its vendor the same amounts listed in the statements for those services." Ocwen Br. at 13. To the contrary, the SAC clearly alleges that the amounts assessed included "hidden charges" and that Ocwen and its affiliate Altisource, (referred to euphemistically by Ocwen as a "third-party vendor") shared in the amount of "hidden charges". SAC ¶54 (ER 123).

Ocwen's protestations that its bills "correctly describe the service for which the fee was charged" and it "made no false statements," *see* Ocwen Br. at 13, simply contradict Plaintiffs' detailed factual allegations, which must be taken as true at the pleading stage. SAC ¶108-114 (ER 142-144). Everything Ocwen told the Giottas suggested that these fees went to pay for the service stated in Ocwen's bills, *i.e.*, that a $100 BPO fee was really $100 for a BPO. *Id.* Ocwen's bills sent to the Giottas simply stated the name of the service and the fee, without disclosing that the charge included an extra fee on top of what was paid for the service. *Id.*

Critically, had the Giottas dug deeper, Ocwen's separate descriptions of these charges specified that the fees went to pay the entity that performed the service, without mentioning Altisource, any additional entity, or any add-on fee. For instance, Ocwen described a BPO fee as paying for: "Brokers or other qualified individuals provide an estimate of the market value of property". SAC Ex.3 (ER 281). This description never discloses that Altisource would add $70-100 on top of

what the "brokers or other qualified individuals" charged to "provide an estimate of the market value of property."

Ocwen seeks to distinguish the numerous authorities confirming hidden add-on fees violate the FDCPA on the basis that Altisource – not Ocwen – added the hidden fees at issue. *See, e.g.,* Ocwen Br. at 22 ("Ocwen added nothing to the amount charged by its vendor; it simply passed the charge on to the Giottas"). It is irrelevant that Altisource as opposed to Ocwen added these hidden charges. The FDCPA in §1692e prohibits "debt collectors" from misrepresenting debts, and allows no safe harbor based on the debt's origin. As alleged, Ocwen – the operative debt collector – knew that its billings did not accurately reflect the nature and character of the fees being charged to the Giottas. Thus, the §1692e violation alleged here arose when Ocwen generated its misleading bills, not when Altisource added its fee. Ocwen cannot deflect liability for its own misleading bills by pointing to Altisource.

In effect, Ocwen is arguing that so long as it outsources its right to perform default-related services to a third-party vendor or agent (whether or not also affiliated with Ocwen), then it is legally permissible to hide any add-ons within the charges billed for the services of that vendor. Ocwen's argument is misguided for at least three reasons.

*First*, the plain language of §1692e does not create any such exception. §1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. This requires the debt collector to accurately describe the character and amount of ***any*** charge and the services rendered. 15 U.S.C. §1692e(2).

*Second,* the courts recognize that that §1692e applies to a mortgage servicer's add-on of third party fees. *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 645 (11th Cir. 2015); *Manrique v. Wells Fargo Bank N.A.*, 116 F. Supp. 3d 1320, 1325 (S.D. Fla. 2015); *Dougherty v. Wells Fargo Home Loans, Inc.,* 425 F. Supp. 2d 599 (E.D. Pa. 2006).

*Third,* Ocwen's argument ignores that allegations in the SAC that Ocwen itself was sharing in and benefiting from the purported "vendor" add-on charges of Altisource. SAC ¶¶53-54 (ER 122-123). The SAC plainly alleges, and describes in detail, that Ocwen's scheme for extracting excessive add-on fees for its default-related services was carried out in conjunction with several of its affiliates, specifically including Altisource. *Id.*

Therefore, whether Ocwen's undisclosed fee is characterized as Altisource's "profit," a "management fee," a "procurement fee," or as an illicit upcharge orchestrated by the cabal of executives controlling Ocwen and Altisource is irrelevant. What matters under this Court's precedents is whether the existence of

the hidden fee would have be material, *i.e.*, would have been a "factor" in the least sophisticated debtor's decision how to respond to Ocwen's bill. *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) (quoting *Lox*, 689 at 827). *See also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). Whatever service Altisource provided, it was not the BPO or Property Inspection that Ocwen represented was being paid for; indeed, Ocwen admits that Altisource's fee paid for no additional service. *See* Ocwen Br. at 16 ("the supposed 'add-on fee' is simply profit earned by Ocwen's vendor").

### C. Ocwen's Hidden Fees Are Material To Unsophisticated Consumers

The Parties agree that a claim under §1692e(2) requires the element of "materiality". *Tourgeman*, 755 F.3d at 1119 (". . .a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA."). This Court in *Tourgeman* explained the legal standard to be applied for determining "materiality":

> "The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).' " *Id.* (quoting *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757–58 (7th Cir.2009)). Thus, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [section] 1692e." *Id.*

Ocwen ignores this governing legal standard.  Ocwen claims "a fee description is 'materially' misleading only where it **impacts the consumer's ability to challenge the fee.**" *Id.* (citing *Donohue*, 592 F.3d at 1034) (emphasis added). Ocwen then claims the Giottas cannot satisfy this invented standard because disclosure of Ocwen's add-on fee would not have permitted the Giottas to successfully resist paying the fee.  Ocwen Br. at 22-24.  Ocwen thus asserts its failure to disclose hidden add-on fees is not material because the Giottas have not pled that, had Ocwen disclosed the add-on fee in the first instance, the Giottas could have successfully disputed it.  Ocwen Br. at 22-23.

Ocwen asks this Court to ignore its own legal standard, and instead apply the wrong legal standard for FDCPA "materiality".  Contrary to Ocwen's assertion, whether disclosure "impacts the consumer's ability to challenge the fee" is not this Circuit's standard for FDCPA materiality.  The correct standard is whether the misrepresentation affects the debtor's ability to choose how to respond to a debt collection demand, not whether it affects their ability to challenge the fee.  *See Donohue,* 592 F.3d at 1034 (a false statement violates the FDCPA if it "may frustrate a consumer's **ability to intelligently choose his or her response**") (emphasis added).  *See, e.g., Tourgeman*, 755 F.3d at 1121 (finding FDCPA §1692e violation where "the factual errors in [debt collector's] letters to [debtor] could easily cause

the least sophisticated debtor to **suffer a disadvantage in charting a course of action** in response to the collection effort") (emphasis added).

Moreover, Ocwen's invented materiality rule conflicts with the rights the FDCPA seeks to protect. The FDCPA protects debtors' rights to be "fully and truthfully apprised of the facts", and to "'understand, make informed decisions about, and participate meaningfully in the debt collection process.'" *Tourgeman*, 755 F.3d at 1122 (quoting *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006)). The Giottas' right to be fully informed about their debts, and participate meaningfully in the debt collection process, does not depend on whether Ocwen's misrepresentation "impacts the [Giottas'] ability to challenge the fee." Ocwen Br. at 22-23 (citing *Donohue*, 592 F.3d at 1034). Ocwen's misrepresentations were not mere "technical" FDCPA violations, but rather were material because charging substantial hidden add-on fees frustrates "the least sophisticated debtor's" . . . "ability to intelligently choose his or her response" to Ocwen's debt collection attempts. *Tourgeman*, 755 F.3d at 1118-19, 1121 (quotations omitted).

The Giottas allege Ocwen – the Giottas' debt collector and loan servicer – violated FDCPA §1692e(2)(A) and (B) by misrepresenting the Giottas' debts for BPOs and Property Inspection fees. Ocwen told the Giottas these fees were for BPOs and Property Inspections. In reality, these supposed BPO and Property

Inspection fees consisted mostly of undisclosed extra fees – or "profits" – far exceeding what the entity that performed the BPO or Property Inspection was paid. Ocwen's billing statements thus gave the false impression to any unsophisticated consumer that the Giottas were being assessed ***only*** for the cost of performing a BPO or a Property Inspection. In fact, as the SAC alleges, the amounts assessed included hidden charges that could not be uncovered by an unsophisticated consumer. SAC ¶¶136-141(ER 150-152).

Ocwen's misrepresentations of these fees are material under this Court's own standard. It is eminently plausible[5] that – because the Giottas had no idea that Ocwen's affiliate was adding $70-100 to a $0-30 fee while performing no additional service – that lack of knowledge "would have undoubtedly been a factor in [the Giottas'] decision-making process, and very well could have led to a decision to pay a debt [they] would have preferred to contest." *Tourgeman*, 755 F.3d at 1121 (quoting *Lox v. CDA, Ltd.*, 689 F.3d 827 (7th Cir. 2012)).

Had the Giottas known that most or all of Ocwen's charges were really Altisource's add-on fees, they could have "intelligently choose[n]" whether to

---

[5] Because the District Court dismissed the Giottas' FDCPA claim under Fed.R.Civ.P. 12(b)(6), the Giottas need only demonstrate that their claims are plausible in order for this Court to reverse the District Court. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017).

"challenge[] the accuracy or legality of the total debt." *See Donohue*, 592 F.3d at 1034. They could have disputed the debt under the FDCPA. 15 U.S.C. §1692g(d). They could have sued under the Deed's requirement that such fees be "reasonable or appropriate." Deed §9 (ER 266). They could have turned to regulators such as the CFPB which had previously entered a consent judgment prohibiting Ocwen and Altisource from charging hidden add-on fees.[6] Indeed, Ocwen's lawyers suggested the Giottas do just that (Hearing Tr. at 14:11-12; ER 33). But, Ocwen's misrepresentation of these charges left the Giottas in the dark about the add-on fees, and thereby caused the Giottas "to suffer a disadvantage in charting a course of action in response to the collection effort." *Tourgeman*, 755 F.3d at 1121.

Indeed, Ocwen's misrepresentations are more clearly material than the misrepresentations in *Tourgeman*, which this Court held stated a valid FDCPA claim. There, this Court held the debt collector violated §1692e(2)(A) by miss-identifying the debtor's original creditor, which "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the

---

[6]     Ocwen's arguments that the Giottas cannot enforce the CFPB consent order and the CFPB consent order does not *per se* prohibit its use of Altisource (Ocwen Br. at 26-27) miss the point. The Giottas do not premise their FDCPA claim on Ocwen's violations of the CFPB consent order, although it does explicitly prohibit hidden fees and upcharges (ER 413, 439-441). Rather, the CFPB consent order shows that the Giottas' informed choice whether to pay or contest Altisource's hidden add-on fee is material because debtors' complaints about mortgage fee upcharges are taken seriously by regulators. *Id.*

collection effort." *Id.* at 1121. That was true even though Tourgeman could have independently discovered the creditor's true identity. *Id.*

If merely miss-identifying a creditor where the debtor could independently discover the truth is a material misrepresentation that violates §1692e(2)(A), then Ocwen billing the Giottas for a purported $100 BPO charge that was really $0-$30 for the BPO and $30-$100 for Altisource does so too.

### D. The District Court Erred In Construing §1692e(2)(A) To Require Allegations That The Fees Were Not Legally Authorized

Ocwen repeatedly mischaracterizes this case as concerning fees Ocwen is permitted to charge the Giottas under the Giottas' Deed. *See, e.g.,* Ocwen Br. at 1 ("This case challenges how Ocwen imposed contractually authorized fees"); 14 ("there is no dispute that the fees were legally authorized, so Ocwen's statements that the Giottas owed those fees were all accurate"); 22 ("Ocwen added no additional fee that was not tied to a specific and contractually authorized service"). This characterization is irrelevant to the question presented in this appeal, which is whether Ocwen's hidden add-on fee was materially misleading in violation of the FDCPA §1692e(2)(A). Whether or not the Giottas' Deed permits Ocwen to charge for BPOs and Property Inspections, there is nothing in the Deed or the law that permits Ocwen to bill for these charges in a misleading way.

The FDCPA includes no exception permitting debt collectors to lie to debtors if the debt is contractually authorized.[7] The FDCPA's statutory language, and this Court's precedents, make it clear whether the debt is contractually authorized is "immaterial" to claims under FDCPA §1692(e). *Tourgeman*, 755 F.3d at 1113, n.2 ("It is immaterial to this appeal whether Tourgeman actually had paid his loan in full; none of his FDCPA claims depends on the validity of the debt"). The Giottas' opening brief explains the FDCPA expressly distinguishes between fees that are contractually unauthorized, and fees that are otherwise authorized but communicated in a misleading way. Giotta Br. at 33-37 *Compare* §1692e (prohibiting misleading debt communications and omitting any "contractually unauthorized" element) *with* §1692f(1) (prohibiting collecting debts that are not contractually authorized). *See* Giotta Br. at 33-37.

Accordingly, this Court has consistently held the FDCPA protects consumers "regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (quoting 123 Cong.Rec. 10241; Rep. Annunzio's statement that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable and civil manner"). *See also Fields*, 383 F.3d at 565 ("Even

---

[7]     Ocwen erroneously states ". . . there is no dispute that the fees were legally authorized, so Ocwen's statements that the Giottas owed those fees were all accurate." Ocwen Br. at 14. The Giottas' opening brief shows they simply have no way of knowing if the hidden, add-on fees are legally authorized without knowing their "character and amount". Giotta Br. at. 27.

if [ ]fees are authorized by contract, as in this case, and even if the fees are reasonable, debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors").

Finally, while it is irrelevant to their FDCPA claim since it only addresses billing disclosures not governed by their Deed, the Giottas never admitted that Ocwen's hidden add-on fee complies with their Deed's requirement that fees be "reasonable or appropriate." *See* ER-266 (Deed, Section 9). Ocwen's assertion to the contrary misstates the SAC and the clear record of this case. The Giottas merely declined to assert not only that Ocwen's fees violated their Deed, but indeed they declined to make any contract-based claim. But to the extent it may be relevant, it is certainly plausible that a $70-100 fee added to a $0-30 BPO is neither "reasonable" nor "appropriate" under the Deed.

## III. OCWEN FAILS TO DEMONSTRATE THAT THE CONTRACTUAL NOTICE AND CURE PROVISION APPLIES TO THIS DISPUTE OVER EXTRA-CONTRACTUAL DUTIES

The Giottas' opening brief demonstrated that their Deed's Notice and Cure provision does not apply to this lawsuit, and applying it to stop the Giottas from vindicating their FDCPA rights would be preempted under 15 U.S.C. §1692n. Ocwen's response addresses, but fails to rebut the Giottas' arguments, and instead renders them superfluous by admitting, for the first time, that notice would have been futile. Ocwen Br. at 39.

**A.    Ocwen's Appellate Brief Admits – For the First Time – That Pre-Suit Notice Would Have Been Futile**

First and foremost, it would be futile for the Giottas to provide pre-suit notice of their claims because Ocwen admits it would not have provided the Giottas with complete relief.  Ocwen's appellate brief states, for the first time, that Ocwen had no intention of curing all of the issues raised by the Giottas, and the Parties would still be litigating over the Giottas' right to FDCPA statutory damages:

> Had the Giottas complied with the notice provision, Ocwen could have explained that the fees at issue are contractually authorized and are appropriate in amount, **or waived the fees entirely**, which may have dissuaded the Giottas from suing over the fees. Ocwen's waiver of fees could have prevented an eventual foreclosure, which also could have reduced the likelihood of litigation.  And even if the Giottas still sued, Ocwen's waiver of fees (and the potential prevention of a foreclosure) would have at least eliminated any claimed actual damages from an FDCPA case, **thereby limiting the issue to one of statutory damages**.

Ocwen Br. at 39 (emphasis added).

Ocwen thus admits that, had the Giottas given the pre-suit notice, the Parties would still be in court litigating FDCPA statutory damages.  Moreover, the Giottas would still be pursuing their class action claims.  It is axiomatic that compliance with a contractual notice and cure provision is excused where notice would be futile. *Gueyffier v. Ann Summers, Ltd.*, 43 Cal.4th 1179, 1186 (Cal. 2008).  Given the Parties would litigate this dispute regardless of Ocwen's promised corrective action, dismissing the lawsuit for failure to give pre-suit notice makes no sense, and wastes both the Parties' and the courts' judicial resources.

22

**B.** **Ocwen's Straw Man Arguments Miss the Point – Whether Notice and Cure Applies Depends On the Right to be Enforced, and Not the Cause of Action Pled**

Ocwen sets up and attacks a straw man by mischaracterizing the Giottas' argument as asserting the Notice and Cure provision does not apply because they pled statutory rather than contractual causes of action. Ocwen Br. §II.A. The Giottas never claimed an applicable Notice and Cure provision could be evaded through artful pleading. Rather, the Giottas claim the source of the duty to be enforced – contractual or extra-contractual – governs whether Notice and Cure applies, not the specific causes of action through which enforcement of that duty is sought.

After attacking an argument the Giottas do not make, Ocwen essentially admits the Giottas' true argument is correct, stating that "a borrower's statutory claims against a lender or servicer do not always relate to the contract…**claims based on conduct that is not addressed or authorized by the contract are not subject to contractual provisions like the notice provision**." Ocwen Br. at 34 (emphasis added). That statement is consistent with the Giottas' actual assertions.

The FDCPA – not the Deed – imposes Ocwen's duty to honestly disclose and describe in billing statements the actual services charged for, which is the issue in this appeal. The Deed does not specify the content of Ocwen bills for BPOs or Property Inspections, nor prohibit Ocwen from billing for these services in a misleading way. Thus, the Giottas' claims that Ocwen violated its duty to bill

23

honestly under the FDCPA implicate no duty imposed by the Deed, nor any act done pursuant to the Deed. Consequently, these claims are not subject to the Notice and Cure provision of the Deed.

Ocwen also ignores the district courts' overwhelming consensus that notice and cure provisions do not apply to claims enforcing extra-contractual duties, but only apply where – unlike here – the claims are premised on contractual duties. Ocwen Br. at 30-33, 37-38. The Giottas anticipated and already explained this consensus, and distinguished Ocwen's cases, in their opening brief. *See* Giotta Br.at 45-48.

A case Ocwen primarily relies on, namely *Sotomayor v. Deutsche Bank Nat'l. Trust Co*. 2016 WL 3163074, at * 1 (S.D. Fla. Feb. 5, 2016) *as clarified*, 2016 WL 3163075, at *2 (Mar. 18, 2016), illustrates this consensus and distinction. *Sotomayor* distinguished *St. Breux v. U.S. Bank, N.A.*, which refused to enforce a notice and cure provision with respect to a dispute over statutory duties, by explaining that, unlike *St. Breux*, the plaintiffs' claims in *Sotomayor* depended on "the terms of the mortgage loan contract". *Id.* (citing *St. Breux v. U.S. Bank, N.A.*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013).

Ocwen also ignores this Court's precedents regarding forum selection clauses confirming the district courts' consensus – namely that focusing on the source of the duties to be enforced – is lawful and makes sense. *See* Giottas' Br. at 48-49 (citing

24

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (enforcing forum selection clause because "[e]ach of these claims relates in some way to rights and duties enumerated in the [contract] [and] cannot be adjudicated without analyzing whether the parties were in compliance with the contract")).  Rather than distinguishing this Court's precedent, Ocwen cites an Eleventh Circuit decision that is inapposite because it parsed a "relates to" provision that is absent from the Giottas' Notice and Cure provision.  Ocwen Br. at 29-30 (quoting *Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1340–41 (11th Cir. 2012)).

The distinction used by the district courts – which  applies notice and cure provisions only to contractual duties and not to extra-contractual duties – should be adopted by this Court.  Without this distinction, a notice and cure provision could be used to evade a host of statutory duties that are outside the scope of any contractual duty, thereby creating another barrier to enforcement of statutory duties enacted for the protection of borrowers and consumers alike.

For the FDCPA, Congress anticipated such state law barriers, and armed the FDCPA with an express preemption provision that "preempts state laws 'with respect to debt collection practices … only to the extent of [their] inconsistency' with the FDCPA."  *Van v. Grant & Weber*, 308 Fed. Appx. 46, 48 (9th Cir 2008), quoting 15 U.S.C. §1692n.  This preemption would surely apply here if, as Ocwen

urges, state law is found to extend a contractual notice and cure requirement to FDCPA statutory duties outside of those required by the contract.

### C. The Giottas Did Not Waive Any of Their Arguments on the Issue of Whether a Deed's Notice and Cure Provision Applies to Independent Statutory Duties Involving Conduct Not Governed by the Deed.

In opposing Defendants' motions to dismiss the first and second amended complaints before the District Court, the Giottas raised the issue of whether a deed's notice and cure provision applies to independent statutory duties, such as those under the FDCPA, that do not involve conduct governed by the deed. ER 81-84, 592-596. While not addressed in its opinion on the first motion to dismiss, the District Court's opinion on the second motion to dismiss did address this issue, finding against the Giottas. ER 5-10, 580-582.

On that record, Ocwen argues that two of the Giottas' legal arguments offered in support of this issue are waived because those exact legal arguments were not made before the District Court. Ocwen Br. at 36-37. However, this Court has made it clear that "we do not require a party to file comprehensive trial briefs on every argument that might support a position on an issue. There is no waiver if the issue was raised, the party took a position, and the district court ruled on it." *Western Watersheds Project v. U.S. Dept. of the Interior*, 677 F.3d 922, 925 (9th Cir. 2012) (citations omitted). This is precisely what occurred here, so there is no waiver. Moreover, because the arguments at issue are purely legal, any waiver would be

excused and the arguments addressed on appeal. *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 992 (9th Cir. 2010).

**D.  Ocwen Admits that if the Deed's "Lender" Includes The "Loan Servicer", then the Loan Servicer is a Party To The Deed, Thereby Upending Both this Court's Case Law and the Basic Nature of the Relationship**

The Giottas' opening brief explained the Notice and Cure provision is limited to the Giottas' Lender, which is not Ocwen. Giotta Br. at 50-56. The Giottas showed the Notice and Cure provision itself is explicitly limited to disputes with the "Lender," and the "Loan Servicer" is separately and independently defined. *Id.* (citing cases). The District Court initially and correctly agreed that the Deed had a separate definition for Loan Servicer and Lender, and the Notice and Cure was limited to the Lender. Order on MTD FAC at ER 580-582.

However, the District Court's later ruled that – based on a subsequent loan modification – the term "Lender" included the separately defined term "Loan Servicer" for all purposes. That later ruling is incorrect as matter of contract interpretation (Giotta Br. at 51-56). It is also absurd because it makes the Loan Servicer a party to the Deed for all purposes, including being owed the principle debt and interest. District Court Ruling at ER 5-8. This interpretation contravenes this Court's case law, and the fundamental operation of the borrower-lender-servicer relationship. *Id.* at 56-58 (citing cases).

Ocwen's brief admits this. Ocwen concedes that the District Court's ruling that "Lender" includes the "Loan Servicer" based on the Giottas' Loan Modification means that "**the prior servicer became a party to the note and deed of trust** by virtue of the loan modification agreement." Ocwen Br. at 46. That ruling cries out for reversal. If this Court agrees with Ocwen and the District Court that a loan servicer becomes a party to the original deed of trust by virtue of a loan modification agreement, then long-standing case law and the basic nature of the borrower-lender-servicer relationship would be upended. Giotta Br. at 56-59 (citing cases). Any borrower with a loan modification would be able to sue their loan servicer directly for breaching their deed. Conversely, any loan servicer with a loan modification could claim the borrower owes the principle debt and interest to it, instead of to the actual lender.

Interestingly, while Ocwen says the Loan Modification made the "Loan Servicer" a party to the Deed by merging it into "Lender", Ocwen stops short of conceding that it - the "Loan Servicer" – is also owed the principle and interest under the Giottas' Deed. This implies that "Loan Servicer" and "Lender" do have different meanings in different contexts under the Deed just as the Giottas explained in their opening brief at pages 52-56. This is especially true for the Notice and Cure provision that separately defines in that very section "Lender" and "Loan Servicer" making it clear that "Loan Servicer" is not a part of the Notice and Cure requirement

that only applies to the "Lender." Giotta Br. at 53, citing Deed § 20 (ER 269). The Loan Modification was limited to "the time and manner of payment" and never addressed the Notice and Cure provision so it did not directly or impliedly modify the express terms of the original notice and cure provision. Giotta Br. at 54, citing Loan Modification at p. 1 and ¶¶ 7 and 9 (ER 86, 88).

DATED:  July 27, 2017

**FEINSTEIN DOYLE PAYNE**
**& KRAVEC, LLC**

By:  s/Joseph N. Kravec, Jr.
Joseph N. Kravec, Jr.
James M. Pietz
Wyatt A. Lison
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone:  (412) 281-8400
Email:  jkravec@fdpklaw.com;
jpietz@fdpklaw.com;
wlison@fdpklaw.com

**YUNKER & SCHNEIDER**
Stephen F. Yunker
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone:  (619) 233-5500
Email:  sfy@yslaw.com

**LEVI & KORSINSKY LLP**
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone:  (415) 291-2420
Email:  rrivas@zlk.com

*Attorneys for Appellants*

**Form 8.**   **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>16-16665</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [6,996] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [          ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant | s/Joseph N. Kravec, Jr. | Date | Jul 27, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

| 9th Circuit Case Number(s) | 16-16665 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jul 27, 2017 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  s/Joseph N. Kravec, Jr.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)